PITTMAN, Presiding Justice,
for the Court:

STATEMENT OF THE CASE

¶ 1. This is an appeal from the Chancery Court of Lauderdale County, Mississippi, where R.E. was adjudged to be the natural and legal father of the minor child, H.W. R.E. appeals the chancellor’s judgment requiring him to reimburse A.C.W., the putative father, $12,403.95 in attorney’s fees and expenses incurred as petitioner pursuant to Miss.Code Ann. § 93-9-45 (1994). R.E. also appeals the chancellor’s judgment requiring him to reimburse C.E.W., the biological mother, for attorney’s fees incurred as petitioner for H.W. under Miss.Code Ann. § 93-9-9 (1994). R.E. finally appeals the chancellor’s judgment requiring him to pay $12,800 in child support as well as outstanding medical bills pursuant to Miss.Code Ann. §§ 93-9-9, 93-9-11.
¶ 2. In affirming the trial court, we find that the findings of fact and conclusions of law expressed by Chancellor Sarah P. Springer are a comprehensive ruling and a model opinion regarding today’s case. Consequently, we adopt Chancellor Springer’s opinion in this matter and attach it (without the case caption) as Appendix A. Because of the sensitive nature of this case, we have modified the opinion to conceal the identity of the parties.
¶ 3. Finding no error committed below, the judgment of the Chancery Court of Lauderdale County is affirmed.
¶ 4. AFFIRMED.
PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J„ DISSENTS WITH SEPARATE WRITTEN OPINION.

APPENDIX A

OPINION AND JUDGMENT
This civil action is before the court pursuant to the Mississippi Uniform Law on Paternity, §§ 93-9-1 et seq. This is not an ordinary paternity suit, however, as this case involves a former husband and wife, a child born during their marriage fathered by a man not the wife’s husband, and the putative father. The procedural history of this civil action and the divorce action between the husband and wife merits review, as it does bear on the relief to be discussed in this opinion.
The subject matter of this civil action first came before this court by way of a stipulation in Civil Action No. 92-832-S, the divorce action between C.E.W. and A.C.W. The court took judicial notice of that civil action in the course of the hearing of this matter.
C.E.W. filed a complaint for divorce against A.C.W. on August 7,1992. Among the allegations of the complaint was a statement that H.W. was “born of this *1021 marriage” on June 28, 1986. The UCCJA Affidavit did not name R.E. as a person who claimed to have custody or visitation rights to the child.
On October 15, 1992, the parties presented a Judgment of Divorce on the Grounds of Irreconcilable Differences to this court, and had their Property Settlement and Custody Agreement approved. C.E.W. was awarded custody of the children, and A.C.W. agreed to pay child support of $400 per month for the two younger children of the marriage, L.W. and H.W. ACW.’s child support was based on his unemployment benefits. A.C.W. further agreed to provide health and hospitalization insurance and to pay all health care expenses not covered by the insurance.
The parties were again before the court in June, 1993, at which time specific visitation was stipulated, and child support was increased by $60 per month, but that $60 did not have to be paid if A.C.W. paid $60 per month on medical expenses. This “increase” in child support was not at issue as C.E.W. has regularly incurred medical expenses for the children which have been AC.W.’s sole responsibility, and he has been paying at least $60 per month on these medical expenses.
C.E.W. took A.C.W. back to court in June, 1995, seeking enforcement of the prior judgments of this court with respect to medical expenses. A.C.W. filed a counter motion which raised the issue of the paternity of H.W. In October, 1995, A.C.W. filed a Motion to Modify requesting that his obligations for H.W. be terminated due to the fact that she was not his biological child. On October 19, 1995, this court entered an Agreed Order compelling A.C.W. and C.E.W. to submit to paternity testing. The testing proved conclusively that A.C.W. is the father of L.W., the older daughter, and A.C.W. was excluded as the father of H.W.
On January 19, 1996, the parties appeared before this court and announced a stipulation which effectively terminated A.C.W.’s parental rights to H.W. Finding that the court could not accept the stipulation without the involvement of a Guardian ad Litem, this court appointed Honorable Michelle Malta to serve as Guardian ad Litem for H.W. In April, 1997, A.C.W. filed another Motion for Modification. This matter is still pending in Civil Action No. 92-832-S.
The civil action currently before this court was initiated by A.C.W. on November 8, 1996, with his Complaint for Adjudication of Paternity which he filed in H.W.’s name as her presumed father and next friend, against C.E.W. and R.E. He also named himself as defendant. On January 2, 1997, C.E.W. filed her Answer and a Cross Claim against R.E., requesting future child support, lump sum back child support, medical and hospitalization insurance and life insurance, and in addition, attorney fees and costs.
On December 31, 1996, R.E. filed a Motion to Dismiss, alleging that A.C.W. did not have standing to bring this action due to the fact that H.W. had a Guardian ad Litem. The court entered an order appointing Michelle Malta as Guardian ad Litem for the purposes of this civil action on April 30,1997.
On February 21, 1997, nunc pro tunc as of January 3, 1997, this court entered an Order for Blood Tests, requiring R.E. to submit to paternity testing, along with A.C.W., C.E.W., and H.W. The test results, dated January 30, 1997, Exhibit 7, excluded A.C.W. as H.W.’s father and showed that R.E. was H.W.’s biological father.
On May 12, 1997, R.E. filed his Answer and Defenses to the Complaint for Adjudication of Paternity. He raised numerous defenses, including lack of standing on the part of A.C.W. to bring suit on H.W.’s behalf; a motion to join Michelle Malta as a necessary party; equitable estoppel; es-toppel by laches; res judicata; and waiver of right to file for determination of paternity as that issue was not raised as a com *1022 pulsory counter claim in Civil Action No. 92-832-S. He asserted similar affirmative defenses against C.E.W. in a separate pleading filed the same day.
On December 3, 1997, this court heard arguments of counsel on the issue of whether A.C.W. and C.E.W. had standing to proceed as H.W.’s parents and next friends. On December 16, 1997, this court entered an Opinion and Judgment finding that A.C.W. and C.E.W. did not have standing to act as next friends of H.W. in this suit because H.W. had a Guardian ad Litem. The trial which had been set for December 16, 1997, was continued to allow the Guardian ad Litem to evaluate whether it was in the child’s best interest for this suit to continue.
On January 28, 1998, the Guardian ad Litem filed a Complaint for Adjudication of Paternity on H.W.’s behalf, requesting the statutory relief set out in the Mississippi Uniform Law on Paternity. R.E. filed his Answers and Defenses to this complaint, continuing to deny his paternity of H.W., but asking that if the court did adjudicate him to be H.W.’s father that he be afforded specific rights of visitation with H.W.
Having been dismissed as H.W.’s next friend, A.C.W. filed a cross-claim against R.E. on April 6, 1998, requesting reimbursement of support he paid for H.W. for the year preceding the commencement of the action, reimbursement for the cost of the paternity testing, and an award of attorney fees for the services rendered by his attorneys through December 16, 1997, when the Guardian ad Litem was substituted as the plaintiff in this litigation. He also asked for other equitable relief. In response to this cross-claim, R.E. asserted the same affirmative defenses which he had previously asserted in defense of the original complaint and added unjust enrichment.
On May 21, 1998, this court heard the arguments of the attorneys on the Motion in Limine and Motion to Dismiss as well as the equitable defenses raised by R.E., and entered its Rulings on Motions and Defenses that same day. The court overruled R.E.’s Motions in Limine and to Dismiss pursuant to Rule 12(b)(6) and the res judicata arguments. Rulings on whether the equitable defenses of laches, estoppel, and unjust enrichment were applicable were reserved by the court for consideration of the case on the merits.
This matter came on for hearing on July 23, 1998, and the parties announced an agreement that R.E. should be adjudged the natural and legal father of H.W. The stipulation set out terms of visitation between R.E. and H.W., provided for health and hospitalization insurance, and required the payment of $400 per month child support by R.E. to C.E.W. commencing August 1,1998.
FINDINGS OF FACT
A.C.W. and C.E.W. were married in Neshoba County, Mississippi, on April 27, 1974. Three children were born during their marriage, the youngest being H.W., born June 28, 1986. C.E.W. and A.C.W. were divorced on October 15,1992.
During her marriage, C.E.W. had an adulterous affair with R.E. DNA tests proved R.E. to be H.W.’s biological father. H.W. was born during A.C.W. and C.E.W.’s marriage, and when A.C.W. and C.E.W. were divorced in 1992, they both signed legal documents that stated that H.W. was the natural child of A.C.W. Both C.E.W. and A.C.W. knew at the time of the divorce that A.C.W. was not H.W.’s biological father.
C.E.W. was in contact with R.E. over the years and did receive money from R.E. from time to time. It is reasonable to believe and the court does find that R.E. knew there was a substantial likelihood that he was H.W.’s father well before this issue was brought before this court. Blood test results dated January 30, 1997, Exhibit 7, conclusively prove that R.E. is H.W.’s father.
*1023 C.E.W. and A.C.W. have provided support for H.W. since her birth. A.C.W. has paid court-ordered child support and medical expenses for H.W. since the divorce in October, 1992. R.E. has provided no support or maintenance nor medical expenses for H.W. from one year next preceding the commencement of this action to August 1, 1998, when his court-ordered support was to have commenced, by stipulation approved by this court.
DISCUSSION
The court reserved ruling on R.E.’s equitable defenses of laches, collateral estop-pel and unjust enrichment until after hearing all of the evidence. The equitable defenses he has raised are not valid against H.W. and his responsibilities for his child. The court should consider whether any of these defenses are applicable to the claims of A.C.W. and C.E.W., individually.
As defined in Warner’s Griffith Mississippi Chancery Practice, § 33, “Laches is not simply delay in asserting a right, but is delay which results in a disadvantage or an injustice to another. Time is only one element. In addition, there must be some element of estoppel, or intervention of rights of third persons, or changes in the relation of the parties, such as would make it inequitable to permit the party then to assert his right.”
In the matter at issue before the court, both C.E.W. and A.C.W. were aware that H.W. was not A.C.W.’s child at the time they presented sworn pleadings to this court that H.W. was a child of their marriage. Indeed, H.W. was a child born during the marriage, and the law presumes that the child is the child of the parties to the marriage. The pleadings presented by C.E.W. and A.C.W. affirmed this presumption, and certainly preserved the best interest and welfare of a child born during their union.
A.C.W. assumed responsibility for H.W., and continued the parent/child relationship •with H.W. When these matters were first raised, there was still a viable parent/child relationship between A.C.W. and H.W., but as the litigation has continued, that relationship has been destroyed. The ultimate stipulation announced by the parties which terminated AC.W.’s parental rights to H.W. was approved by the Guardian ad Litem as in H.W.’s best interest.
There was obviously an effort on ACW.’s part to be H.W.’s father, even though he knew the biology wasn’t there. Has there been injustice to R.E., the man with whom C.E.W. had an adulterous affair? Has he been unfairly disadvantaged? The answer clearly is no. R.E. had reason to believe that H.W. was his child, and he shirked responsibility for raising this child, allowing another man to take that responsibility. His assertion of the equitable defense of laches will not allow him to avoid this court’s consideration of the claims for relief asserted against him by A.C.W. and C.E.W.
R.E. has also asserted collateral estoppel. This defense is based on the fact that C.E.W. and A.C.W. swore in their divorce action that A.C.W. was H.W.’s father. There are numerous differences between the current litigation and the divorce action between C.E.W. and A.C.W. which make collateral estoppel inapplicable as a defense for R.E. R.E. was not a party to the divorce action and neither was H.W. C.E.W. and A.C.W. affirmed a legal presumption that H.W. was a child of the marriage because she was born during their marriage. The issue of H.W.’s actual paternity was not litigated in the prior action. Therefore, collateral estoppel will not bar this court from considering C.E.W.’s and A.C.W.’s claims against R.E.
Will A.C.W. and C.E.W. be unjustly enriched if this court should award to them monetary judgments against R.E.? Their actions against R.E. are brought pursuant to the Uniform Law on Paterni *1024 ty, §§ 93-9-1 et seq. The purpose of these statutes is to allow for establishment of paternity of children, to provide for their support, and to provide for reimbursement of those who have supported that child when the purported father has not provided support. The only one who has been unjustly enriched in the matter under consideration is R.E., who has avoided his responsibilities to H.W. The doctrine of unjust enrichment likewise will not protect R.E. from the claims asserted against him in this civil action.
§ 93-9-7 specifically includes a child such as H.W.: “[a] child born out of lawful matrimony also includes a child born to a married woman by a man other than her lawful husband.” R.E. is obligated under this code section for education, necessary support and maintenance, and medical expenses of H.W. By stipulation announced at the commencement of the hearing, R.E. has assumed legal responsibility for current and future support and maintenance, as well as current and future medical expenses. The question remaining is R.E.’s liability for past support and past medical expenses, as well as his liability for attorney fees incurred in this litigation.
Exhibit 5 is A.C.W.’s summary exhibit showing the medical expenses he has paid for H.W. for the year preceding the commencement of the action through the present. His request for reimbursement is for $1,743.88. Exhibit 6 is the Riley’s Hospital bill in the sum of $7,470.81 incurred the last time H.W. was in the hospital. This bill has not been paid, but A.C.W. is being dunned by collection agents to pay this bill. A.C.W. requests that R.E. be made liable for this bill: it was incurred in June 1997.
A.C.W. has paid $400.00 per month child support for L.W. and for H.W., and requests that R.E. reimburse him one-half that amount as the portion of the child support payment which could be attributed to H.W.’s support. A.C.W. also seeks to have reimbursement of the attorney fees incurred by him while he was acting as H.W.’s next friend, from the time the suit was initiated until December 16, 1997 when Michelle Malta, the Guardian ad Li-tem, was substituted as H.W.’s next friend. Mr. Wright’s attorney fee statement was entered into evidence as Exhibit 8.
R.E. acknowledged from the witness stand that he is H.W.’s father. Although he is willing to pay for current and future support, maintenance, and medical expenses for H.W., he is not willing to pay for any past expenses related to his child.
R.E. is the owner of two businesses. He professed no knowledge of the businesses’ profits, expenses, or value, as all bookkeeping functions are performed by his wife. He has $22,000.00 in equity in his home, owned jointly with his wife, T.E. He has $68,436.00 in equity in the commercial property on which his businesses are located. (See Exhibit 3). He lists no value for his shares (100% ownership) of one of his businesses.
C.E.W. testified that she is not seeking back support for H.W. as she has received child support from A.C.W. for the past years. She does, however, seek attorney fees. Her attorney, David Linder, had his attorney fee statement entered in evidence as Exhibit 15. Mr. Linder testified that his efforts led to the settlement of the financial issues between R.E. and C.E.W. as well as the visitation issues. He is the attorney who propounded the discovery relevant to the financial issues.
T.E., R.E.’s wife, testified that she is the co-owner of the businesses, as well as the bookkeeper. T.E. called herself co-owner but stated that R.E. considers himself the owner of the business and the owner of 100% of the stock. She asserted that although the business accounts had balances of thousands of dollars, those funds were needed to operate the businesses. Exhibits 12, 13, and 14 show that the businesses are viable enterprises which have substantial value, certainly more than the “zero” value of stock testified to by R.E.
*1025 T.E. has known for some time that R.E. could be H.W.’s father. She and R.E. have not planned ahead for any judgment for past support. However, T.E. admitted that R.E. sold a trailer park operation about four or five years ago and netted $20,000.00 from the sale. As a condition to her staying with him in spite of the problems looming with C.E.W., she had R.E. give her the proceeds of the sale, and she put the money in a “trust fund” for the benefit of her son with R.E., S.E. This transfer of money was clearly done in anticipation of this litigation.
When questioned about this “trust fund,” T.E. said it was invested as a demand note, earning 8% interest. The money is not insured and earns about $1,600.00 interest per year. The money is not really in a “trust fund” per se: S.E.’s name is on the note as well as T.E.’s name. She made a $3,000.00 “withdrawal” a year ago to pay for S.E.’s school tuition at a local private school.
From R.E.’s and T.E.’s testimony and accompanying exhibits, it is apparent that R.E. has had the ability to support H.W. and does have assets from which a judgment for past support and medical expenses as well as attorney fees can be paid.
In her pleadings, C.E.W. has asked for an award of lump sum back support from R.E.,- past medical expenses and the attorney fees she has incurred in this action. The remainder of her requests were resolved by the stipulation. A.C.W. has asked for reimbursement of one-half of the support payments he has paid to C.E.W., reimbursement of medical expenses paid by him for H.W., shift of the responsibility for past unpaid medical expenses to R.E., and reimbursement of his attorney fees incurred.
The prayers for relief are governed by the Uniform Law on Paternity, §§ 93-9-1 et seq. § 93-9-11 limits the liability of the father for past education and necessary support and maintenance and other expenses to a period of one year next preceding the commencement of an action. This section has been troubling to me, as it gives illegitimate children a more afivanta-geous position than legitimate children. There is no comparable code section which allows recovery of back child support for a legitimate child without the éntry of a support order to start the support. Furthermore, it is not clear whether the “back support” includes the support obligation accrued during the pendency of the action.
What should R.E.’s obligation to H.W. be under the current circumstances? Obviously, he is liable for a year’s support for the year next preceding the commencement of the action, as set out in § 93-9-11. At the rate of $400.00 per month, which is the amount of support he has agreed to pay for current support, this support would amount to $4,800.00. What about support during the pendency of this action? Does § 93-9-11 allow R.E. to prolong the litigation and avoid the entry of a support order to delay the imposition of a support order and thereby reduce his obligation to his daughter? If the recovery from R.E. is limited by § 93-9-11 to this one year of support, then is equity served?
R.E. had an adulterous affair with C.E.W. which resulted in H.W.’s birth in 1986. He had reason to believe the child was his and did give money to C.E.W. from time to time, although no money was given in the past few years.[1] This action was initiated in November 1986, and conclusive evidence that R.E. was H.W.’s father was available to R.E. in early February, 1997. A review of the procedural history of this litigation, supra, shows that R.E. vigorously asserted defenses to this litigation and invoke numerous equitable *1026 defenses to avoid the adjudication which ultimately was stipulated to at the commencement of the final hearing of this civil action. This court is of the opinion that it would be inequitable not to hold R.E. liable for H.W.’s support not only for the year preceding the commencement of this action, but also for the many months which went by while this action was pending.
§ 93-9-29 provides that the order of filiation shall provide for the support of the child prior to the making of the order of filiation and such other expenses as the court may deem proper.[2] In the fact situation at hand, it is proper to charge R.E. with H.W.’s support during the pendency of the action, especially considering the fact that he has set aside $20,000 for his son S.E.’s support in anticipation of this civil action. R.E.’s child support obligation for H.W. which accrued during the pendency of this action totals $8,200.00. Combined with the year’s support prior to the commencement of this action, his liability for past child support for H.W. is $12,-800.00.
To whom should this money be paid is the next question which must be answered. A.C.W. seeks reimbursement of the amount he has paid and argues that the back child support provisions in the paternity law refer to reimbursement of the individual(s) who have supported the child which the father did not. C.E.W.’s pleadings request an award of lump sum back child support, but when she testified, she stated that H.W. had been supported (by A.C.W.) and, therefore, she was not seeking the back support provided for by statute.
It would not be equitable to award a judgment of lump sum back child support to C.E.W. when she states that she has received support from A.C.W., and she is not seeking the award. Likewise, it would not be equitable to reimburse A.C.W. for child support he has paid for H.W. In 1992, he stood before this court, knowing H.W. was not his child, and asked this court to approve his agreement to pay $400.00 per month support for H.W. and her sister, L.W. This is a bargain that he made in the process of his divorce, and it is an obligation into which he entered voluntarily. Furthermore, the amount of child support he is paying is low, considering his current income as shown in Exhibit 1, his income and expense statement. His statement shows a gross monthly income of $5,150.00 and a net income of $3,703.74, including a deduction of $300.00 for work related travel. The original amount of child support (modified only by $60.00 per month on medical expenses) was based on A.C.W.’s unemployment compensation benefits.
The big loser in all of this litigation has been H.W. She grew up believing the A.C.W. was her father until, at the tender age of ten, she was given the cruel news that he was not. Her relationship with this man has been permanently destroyed, and she has a new father that she does not know. This court addressed the importance of R.E.’s and C.E.W.’s efforts to establish a relationship between R.E. and H.W., and requested T.E.’s encouragement and participation in this process. H.W. has not done anything to be in the predicament that she is in, and her life has been inexorably and irretrievably changed, and not necessarily for the better, by the actions of those adults responsible for her best interest and welfare. The only party who in equity should receive the award of lump sum support is H.W.
H.W.’s Guardian ad Litem included in her pleadings a request that H.W. be awarded relief pursuant to § 93-9-29. § 93-9-29(3) gives the court discretion to require the payment of the back support “to the mother, or to some person ... to be designated by the court as trustee.” The court requires that C.E.W. file a separate civil action requesting that she be appointed the General Guardian of H.W. R.E. shall pay to C.E.W. as Guardian for *1027 H.W. the sum of $12,800.00 within thirty days of the entry of this opinion and judgment. C.E.W. shall invest said sum in an interest-bearing account styled “Guardianship of H.W.” The nature of the investment shall be submitted to the court for approval in the Guardianship action.
Just as R.E. is liable for back support of H.W., he is also liable for medical expenses of the child. During the year preceding the initiation of this action and during the pendency of this action, H.W. has been covered with health and hospitalization insurance provided by A.C.W. A.C.W. has been making minimal payments on outstanding bills ($60.00 per month), and there are large sums still outstanding for H.W.’s medical treatment. The latest hospitalization at Riley’s Hospital involved charges which may not be covered by A.C.W.’s insurance because of an alleged failure on C.E.W.’s part to follow the insurance guidelines on the selection of a hospital. There may be some insurance benefits to be paid on that account, however, and A.C.W. is ordered to cooperate in any way he can to ensure that if there is some coverage of those charges from his insurance policy that whatever amounts are available are paid by his insurance company to reduce the balance of that bill.
The court will not order any reimbursement of A.C.W. for amounts expended by him for H.W.’s medical expenses. He has paid the bare minimum to comply with the judgments in civil action § 92-832-S, and again, he is only paying what he contractually agreed to pay and what he asked this court to incorporate in a court order. However, all unpaid balances on all medical expenses of H.W. incurred from November 8, 1995, through the date of the announced stipulation in this civil action shall be paid by R.E. R.E. may make appropriate arrangement with the respective health care providers and/or collection agencies to pay these balances, but he shall make said arrangements within thirty days of the entry of this opinion and judgment to have all such accounts transferred from the name of A.C.W. to his own name. A.C.W. and R.E. shall cooperate with one another and the health care providers and/or collection agencies to accomplish this transfer.
The remaining issue is whether or not R.E. should have to pay the attorney fees incurred by A.C.W. and C.E.W. § 93-9-45 provides that if the court enters [an] order of filiation, all costs, including attorney fees of the petitioner shall be taxed to the Defendant, in this case R.E. The court has already assessed the fees of the Guardian ad Litem and all court costs to R.E. and has required R.E. to reimburse A.C.W. for the money paid by him for the paternity testing. From the time this action was initiated (and during the time the action was being prepared to be initiated) until the court substituted Michelle Malta, Guardian ad Litem, as next friend of H.W., A.C.W. did incur attorney fees as “the petitioner” as contemplated by this code section.
ACW.’s lawyer, William Wright, is from Jackson, Mississippi, and his hourly rate is more than what an attorney of his experience and expertise in Meridian, Mississippi, would charge for similar work. Mr. Wright testified about the work performed by his law firm on this case. This is not an ordinary case, by any means, and Mr. Wright reported that his firm performed a good bit of research and had to face a vigorous defense by R.E. Stacy Stracener, an attorney in Mr. Wright’s office, charged her time at $115.00 per hour. Mr. Wright’s usual fee is $185.00 per hour, but he reduced his charge to $150.00 for this lawsuit. Mr. Wright has engaged in the practice of law for twenty-four years, and most of that practice has been in the family law area. He was obviously thoroughly prepared in his work in this litigation, and he deserves a reasonable fee for the work performed.
It was AC.W.’s choice to hire an attorney from Jackson, and A.C.W. should be responsible for the travel and long dis *1028 tance telephone expense which would not have been incurred had he selected a local attorney. The court has gone through Exhibit 8, and does find that some of the time reflected relates to modification and contempt matters in civil action § 92-932-S. Taking that time away, as well as travel time, the court finds that 104.75 of the total 138.25 hours submitted are related to this action. Considering the cost of securing a competent attorney, the skill and standing of Mr. Wright, the nature of this case and the novelty and difficulty of the questions at issue, the degree of responsibility involved in the management of this case, the time and labor involved, the preclusion of other employment due to the time required on this case, and the usual and customary charge for similar services in this community[3], this court finds that a reasonable fee to be assessed R.E. for Mr. Wright’s work while A.C.W. was petitioner is $12,046.25.
The expenses incurred while A.C.W. was the petitioner for H.W. also should be considered. Taking away long distance calls, travel expenses, and court costs advanced, the expenses total $357.70. The total attorney fees and expenses incurred by A.C.W. as “petitioner” chargeable to R.E. pursuant to § 93-9-45 is $12,403.95. R.E. shall pay $12,403.95 to A.C.W. within ninety days of the entry of this opinion and judgment.
Should C.E.W.’s attorney fees also be reimbursed by R.E.? As discussed infra, § 93-9-45 provides that costs, “including the cost of the legal services of the attorney representing the petitioner ... shall be taxed against the defendant.”[4] § 93-9-9 contemplates a mother being the petitioner in a paternity action such as this. C.E.W.’s pleadings did not initiate this action, but she did style her requests as “next friend” of H.W. in the cross claim she filed against R.E. As with A.C.W., C.E.W.’s status of “next friend” was removed December 16, 1997, when this court substituted Michelle Malta as Guardian ad Litem of H.W.
Exhibit 15 is the itemized statement of C.E.W.’s attorney. It appears that all of the charges listed relate to the paternity action. The net result of the attorney work shown in that statement is the disclosure of financial information through discovery and the stipulated settlement of the paternity, child support, medical insurance coverage, and visitation issues. Although not all of the work performed by David Linder on C.E.W.’s behalf was performed when she was before the court as H.W.’s next friend, all of that work benefitted H.W. C.E.W. is entitled to attorney fee reimbursement for the work performed up to and including December 16, 1997, pursuant to § 93-9-45. She should be awarded the attorney fees incurred on the balance of the statement as well, as that work did inure to HW.’s benefit.
Considering the McKee factors (discussed infra), the attorney fee statement of $3,744.50, plus ten hours of trial time at $90.00 per hour ($900.00), less the fifteen minutes Mr. Linder testified that he spent on the modification action ($22.50), the court finds that a fair and reasonable attorney fee for the representation of C.E.W. as petitioner for work benefitting H.W. is in the sum of $4,622.00. This is money that C.E.W. cannot afford to pay, as her income and expense statement shows a minimal standard of living, minimal assets, and high liabilities. (See Exhibit 2). Payment of attorney fees would negatively impact C.E.W.’s ability to provide for her children. R.E. is better able to pay this expense, and the statute cited above does contemplate the Defendant being assessed this cost if he is found to be the father of the minor child. Therefore, R.E. shall pay the sum of $4,622.00 in reasonable attorney fees to C.E.W. within *1029 ninety days of the entry of this opinion and judgment.
SO ORDERED AND ADJUDGED, this the 31 st day of August, 1998.
/s/ Sarah P. Springer Chancellor

. I believe the contributions to C.E.W. stopped when R.E.’s wife discovered what had been going on.

. This court's emphasis.

. See McKee v. McKee, 418 So.2d 764, 767 (Miss.1982).

. This court’s emphasis.