881 So.2d 227 (2003)
Joseph GRIFFITH, Appellant,
v.
Sue Ann PELL, Next Friend And Parent of Stephanie Ann Pell, Minor, Appellee.
No. 2002-CA-00532-COA.
Court of Appeals of Mississippi.
September 2, 2003.
Rehearing Denied October 28, 2003.
*228 Patricia Peterson Smith, for Appellant.
Mark W. Prewitt, Vicksburg, for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
SOUTHWICK, P.J., for the court:
¶ 1. This is a paternity action. The mother of the subject child brought the suit against someone other than the man who several years earlier she had claimed was the father. That first-identified father married the mother before the child was a year old. He had no reason to doubt that the daughter was his own until the child was age four. The spouses were by then involved in a divorce. The chancellor in the present paternity suit, relying solely on the blood test, ordered the newly-designated biological father to pay child support. Several different proceedings have been held based on these facts, including this paternity action, the divorce, and a declaratory judgment motion brought by the husband and long-supposed father, the latter seeking the rights of a father. In some pleadings, but not in others, the newly-identified biological father disclaimed any desire to support this child to whom he was apparently a stranger. Instead, he endorsed the husband's desires for the rights of a father.
¶ 2. These facts raise important questions of the rights of men who have for a variety of reasons, including the deception of the mother, established a substantial relationship with a child. In this paternity suit, the chancellor refused to consider any facts other than those addressing biology. Paternity actions are about biology. In technologically simpler times, biological proof was more ambiguous. Instead what was often decisive was the presumption that a child born to a married woman was fathered by her husband. That presumption and corollaries of it furthered important public policy interests that are well-reflected in the facts of this case. Those policies recognized that strong evidence to discredit the presumption might exist but still would not control. The presumption and its policies have largely been overtaken by technology, however. In the particulars of this proceeding to establish paternity, the chancellor need not have considered other issues. We affirm.
¶ 3. We are not holding, though, that the non-biological father is without remedy when his interest in this child far exceeds that of the man who only contributed to the child's DNA. The husband was at least the stepfather of the child once biological parentage was determined. There are custodial and other rights that can be asserted in divorce proceedings by a stepparent. A divorce is underway.
¶ 4. The dissent urges the joinder of this appeal to the separate appeal from the couple's divorce that has not yet been briefed. No motion to consolidate the actions at the trial level appears in the record of this case. The appeal in the divorce action has not been deflected to this court, so we do not have authority to order consolidation. *229 We examine what is before us. From a finding that identifies the biological father flows an obligation to pay support. We find that factual paternity is uncontested. There is no need to maintain the life of this appeal when there is nothing in the paternity resolution that is in error. The dissent's concerns may properly be addressed in the forum of the divorce suit. With respect, there is no purpose in forcing those issues into this appeal from a judgment that established beyond question the identification of the biological father. Since there is no question, the paternity case should end.

FACTS
¶ 5. In 1995, Sue Ann King became pregnant and told Robert "Sonny" Pell he was the child's father. The couple began living together. Stephanie Pell was born in November 1995. About a year later, Stephanie's ostensible parents married. Sonny Pell commenced divorce proceedings about eighteen months thereafter, claiming and eventually proving his wife's adultery.
¶ 6. The present appeal arises from one of several proceedings growing out of the parties' marriage and the wife's children. Five years after telling Pell that she was pregnant with their child, Mrs. Pell brought a paternity action against Joseph Griffith, claiming he was actually the father of the child. Griffith is the appellant here, as Pell is not a party on this appeal.

Proceeding No.1  Divorce.
¶ 7. Sonny Pell's petition for divorce was granted in December 2002. Pell has appealed portions of the divorce order. Pell v. Pell, 2003-CA-00202. We have obtained a copy of the order from the appellate record on the divorce for background and clarification purposes.
¶ 8. Pell filed for divorce in July 1998, on the ground of adultery. He sought custody of Stephanie, who he had always believed to be his daughter. An order for temporary joint physical and legal custody was entered by the chancellor a few weeks later. In her first answer, Mrs. Pell stated that her husband was Stephanie's father. On June 4, 1999, Mrs. Pell filed an amended answer, claiming that he was not the biological father. The chancellor ordered genetic testing. The tests definitively excluded Pell as Stephanie's biological father.
¶ 9. In the divorce order, the chancellor found that Mr. Pell had no legal standing to seek custody or visitation and ordered all allegations concerning custody stricken from the pleadings. No provisions for visitation between Mr. Pell and Stephanie were provided for in the divorce order.

Proceeding No.2  Paternity.
¶ 10. In February 2000, Mrs. Pell filed suit against Joseph Griffith, Sonny Pell and the Mississippi Board of Health to have Griffith declared Stephanie's father. Her then still-husband was included as a necessary party although she denied that he had any legal rights to the child.
¶ 11. Neither individual defendant answered the complaint. Mrs. Pell was granted a default judgment against her husband. Griffith was ordered to undergo genetic testing, which established him as Stephanie's father. An agreed order of filiation was entered in July 2000, which declared Griffith to be the biological father and ordered him to pay child support. The order stated that this was partial relief. All other matters would be later addressed by the court. Griffith, Mrs. Pell, and counsel for Mr. Pell signed the order, the last signing as to form only.

Proceeding No.3  Declaratory judgment in paternity suit
¶ 12. In January 2002, Griffith and Pell filed in the paternity suit a motion for *230 declaratory judgment, asking that Pell be declared Stephanie's legal father on the basis that Pell's custody or continued visitation was in the child's best interest. He argued a doctrine called "paternity estoppel," which has been adopted in some jurisdictions. The doctrine holds that when a mother misleads a man into believing he has fathered her child, and the man relies upon this misrepresentation, the mother will be estopped from later denying the man's paternity.
¶ 13. Griffith submitted with this motion an affidavit that he did not know the child, did not wish to initiate a relationship with her, and felt her interests would better be served by permitting Pell to adopt Stephanie. He also submitted a document in which he agreed to relinquish all parental rights in favor of Sonny Pell. Mrs. Pell filed a motion to dismiss on the basis that this was a collateral attack upon the order of filiation.
¶ 14. A hearing was held in February 2002. It was brief. Griffith was called as an adverse witness by Mrs. Pell and questioned about his financial and employment status. Griffith's counsel asked one question, which was whether he knew the woman at the other table. Mrs. Pell objected, arguing Griffith was attempting to relitigate the issue of paternity. Griffith denied that purpose, stating he was going into the issues not resolved by the filiation order, specifically the question of whether having Mr. Pell declared the child's legal father would be in the child's best interest. The chancellor stated that issue had been resolved by the filiation order. The only matter to decide was Griffith's child support obligation and the visitation to be granted him. Griffith's counsel continued to argue primarily about equitable estoppel. The chancellor called for a bench conference, which was held off the record. When the record resumed, Griffith was recalled by his attorney and the same ground on finances and employment was again covered.
¶ 15. The written order following the hearing denied the motion for declaratory judgment, ordered Griffith to pay fourteen percent of his income in child support, and granted Griffith "reasonable rights" of visitation. It is this order which is the subject of appeal.

DISCUSSION

1. The paternity hearing
¶ 16. Griffith alleges the chancellor erred in refusing to hear testimony on any matter but child support and visitation, particularly those matters raised in the declaratory judgment motion. It is also alleged that the wrong legal standard was applied when the child's best interest was not weighed. The chancellor found the declaratory judgment motion raised the issues already settled by the order of filiation. Any testimony on those issues was prohibited by res judicata and collateral estoppel. The only matter left outstanding to determine was Griffith's obligations to the child.
¶ 17. The procedures for establishing paternity of a child are set out by statute. The Uniform Law on Paternity was enacted in Mississippi to allow for establishment of paternity of children and to provide for their support. R.E. v. C.E.W., 752 So.2d 1019, 1023-24 (Miss.1999). Griffith argues that an action in paternity is of wider scope than merely assigning fatherhood to the contributor of DNA and then ordering child support.
¶ 18. Current case law provides that paternity suits have limited purposes. Where scientific evidence points overwhelmingly towards one man as the father of a child, paternity is established; the only matter left to resolve in the paternity *231 action is that of support. Rafferty v. Perkins, 757 So.2d 992, 996 (Miss.2000). If paternity was established through an earlier agreed order of filiation, child support and visitation orders may be vacated once DNA testing establishes someone other than the named individual is the child's biological father. M.A.S. v. Mississippi Dept. of Human Serv., 842 So.2d 527, 531 (Miss.2003). In M.A.S., the person initially determined to be the natural father in the agreed order wanted neither that status nor to provide support. Id. at 528.
¶ 19. We interpret these precedents, both of which reversed our contrary holdings, to mean that a paternity action is not the preferred venue for the determinations that Griffith wanted. The best interest of the child standard is to be applied when determining custody issues, such as in a divorce proceeding. Although a natural parent is entitled to custody of a minor child, there are circumstances under which that entitlement may be set aside in favor of a third party, including a stepparent. Logan v. Logan, 730 So.2d 1124, 1126 (Miss.1998). That, however, is a matter better resolved in the appeal of the Pell divorce proceedings and not in the Griffith paternity action.

2. Content of hearing transcript
¶ 20. Griffith also alleges portions of the hearing were not recorded in the transcript. The transcript reflects the following:
[Counsel for Griffith, addressing the court]: Would you entertain it at any point allowing Robert Pell to accept the responsibilities and obligations that the statute would have ordinarily applied to Joey Griffith?
[Counsel for Mrs. Pell]: That's not before the Court, Your Honor. There's no pleading before the Court other than the 
[Counsel for Griffith]: There is a pleading for the declaratory judgment.
The Court: Let's go off the record just a minute. Y'all come up here. (Brief pause while both attorneys and the court have an off the record discussion at the bench.)
¶ 21. It is Griffith's assertion that during this pause, the chancellor took Sue Ann Pell to task for attempting to destroy Mr. Pell and Stephanie's relationship, but because the order of filiation was in place, she had no options as to her ruling. The chancellor allegedly informed the parties that she already knew how she would rule and would hear no testimony but that relating to Griffith's payment of child support, medical insurance, and whether he wanted visitation rights. Counsel for Griffith asked that these statements be repeated for the record. The chancellor declined to do so, and counsel objected. Counsel on appeal alleges she believed the record had captured both the request to repeat the statements and the objection, but it did not. Griffith alleges he was prejudiced by this gap in the transcript because it did not preserve the court's instructions that prevented him from arguing his motion for declaratory judgment.
¶ 22. A party claiming error from an omission in the record must demonstrate prejudice from the omission. Stapleton v. State, 790 So.2d 897, 899 (Miss.Ct.App.2001). An omission does not constitute automatic reversible error. Id. Griffith claims prejudice from the unrecorded command to put on evidence only of ability to pay child support and his possible desire for visitation with Stephanie. He argues this left him without a case for his motion for declaratory judgment and that it prejudiced his appeal to this court.
*232 ¶ 23. The transcript shows that most of the statements Griffith claims the chancellor made off the record were also made on the record in the exchanges just prior to the unrecorded bench meeting. Griffith cannot have been prejudiced by statements made off the record when they were also made on the record and his counsel had the opportunity to argue his contrary position. We also find that no reversible error in those rulings occurred.

Conclusion
¶ 24. The suit before us on this appeal concerns whether Joseph Griffith was the natural father of Stephanie Pell. He was. Support was therefore properly ordered.
¶ 25. We need not determine whether there was a valid procedural mechanism to join this paternity action with other proceedings. Even if one lawsuit might have been able to resolve issues regarding paternity, Griffith's desire to have his rights terminated, Sonny Pell's wish for the obligations of fatherhood, and the Pell divorce, it was not mandatory on this record to join the claims. The interests of Sonny Pell as a stepparent may be addressed in the divorce proceedings if properly raised. If those interests affect support payments to the child or other continuing matters arising from this paternity action, that too may be examined. There is no need to join what has beyond contest been decided in this case, namely, the identity of the biological father, to these other more involved questions. Griffith was the biological father and as a result is made to pay child support until some other order supplants that obligation. We find no error.
¶ 26. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
GRIFFIS, J., Dissenting:
¶ 27. Because I believe that the majority's decision may result in an unconscionable injustice, an inconsistent result, and judicial inefficiency, I respectfully disagree with the majority and dissent. Pursuant to Mississippi Rules of Appellate Procedure 3(b), I would sua sponte consolidate this appeal and Pell v. Pell, 2003-CA-00202 for further consideration by this Court or the supreme court.
¶ 28. This case and Pell v. Pell, 2003-CA-00202 present the courts of this State with a contradiction that is not provided for under Mississippi law. The primary question in both cases is, who is the "father" of the minor child, Stephanie? The secondary question in both cases is, who is entitled to or responsible for the nurture, care and custody of Stephanie? See Simpson v. Rast, 258 So.2d 233, 236 (Miss.1972) ("[O]ur society demands, and the law approves the rule, that the natural parents of children have the natural right to the nurture, care and custody of their children.").
¶ 29. Here, the agreed order of filiation declared that Joseph Griffith is "the" biological father of Stephanie. Immediately upon the entry of this order, Joseph Griffith was legally declared Stephanie's father and was entitled to certain rights.
¶ 30. The majority considers and refers to the divorce action, Pell v. Pell, 2003-CA-00202. Professor Shelton Hand states that "[o]ne of the strongest presumptions known to the law is the presumption that a child born in wedlock is legitimate. Such is based on the strongest of public policies *233 favoring marriage; thus, all reasonable presumptions will be given to the best interest of the child born during wedlock." N. Shelton Hand, Mississippi Divorce, Alimony & Child Custody §§ 21-5 (4th ed.1996) (citing Foster v. Foster, 344 So.2d 460 (Miss.1977)). Thus, as a result of his marriage to Stephanie's mother, Sue Ann, Sonny Pell has or may have certain rights, duties, responsibilities and obligations to Stephanie and her mother. See Miss.Code Ann. § 93-5-23 (Rev.1994).
¶ 31. Since the agreed order on filiation was entered before the final judgment was entered in the divorce of Sonny Pell and Sue Ann Pell, who were married when Stephanie was born, the chancery court found an unusual domestic situation where Stephanie legally then had two "Daddys." Mississippi law does not provide for dual fatherhood. However, through two separate cases, courts of this state must sort out the pieces to the puzzle.
¶ 32. I begin my analysis by disagreeing with the majority's conclusion that "[p]aternity actions are about biology." Biology has advanced to the point that the child's father may now be identified with accuracy. However, the essence of a paternity action is to discover and declare who is the father of a child so that the rights, duties, obligations and responsibilities of both the father and child may be established and enforced. Hence, in my opinion, a paternity action is the beginning, rather than the end, of the court's consideration of the rights, duties, responsibilities and obligations of and between the parents and child.
¶ 33. Just as with the divorce statutes, Mississippi Code Annotated §§ 93-5-1 through 95-5-33 (Rev.1994), the paternity statutes, Mississippi Code Annotated §§ 93-9-1 through 93-9-49 (Rev.1994), create the legal mechanism to determine the identity of the biological father. These statutes also create a remedy to enforce the obligations that a biological father owes to his child. However, the inquiry and resulting legal effect of the paternity action does not stop there.
¶ 34. Upon the determination that Joseph Griffith is Stephanie's biological father, other rights follow. The parental rights of a father are defined in Mississippi Code Annotated section 93-13-1 (Rev.1994):
The father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education, and the care and management of their estates. The father and mother shall have equal powers and rights, and neither parent has any right paramount to the right of the other concerning the custody of the minor or the control of the services or the earnings of such minor, or any other matter affecting the minor.
¶ 35. I am persuaded by the fact that the care, custody and support of Stephanie is now the central issue in two cases before the appellate courts of this state  this case and Pell v. Pell, 2003-CA-00202. The chancellor recognized the interrelationship of these cases when, during the hearing, he stated:
I'm not in any way condoning what the mother has done. In fact I think it is terrible, and the child is going to be the person that suffers from this. I wish all three of the parties could get together and work it out  that's what civilized people should do, but evidently they are not able to do that.
This case was before the chancellor on the motion for declaratory judgment signed by Joseph Griffith, Sonny Pell and their attorneys. The fact that the majority looks outside the record in this case, to review *234 the chancellor's order in Pell v. Pell, clearly indicates the significant interrelationship and dependency of these two cases. Consistency and judicial efficiency require consolidation.
¶ 36. More importantly, the guiding principle in child custody cases is that the best interest of the child is paramount. Pearson v. Pearson, 458 So.2d 711, 713 (Miss.1984). In these two cases, we have the unusual situation where two men acknowledge their different relationship with Stephanie. Joseph Griffith acknowledges that he is her biological father. Sonny Pell believed he was her father, married her mother and spent many years providing, nurturing and caring for her.
¶ 37. Unfortunately, in an extraordinary number of cases, our courts are called upon to compel men to do what they should do  meet their obligation to support and nurture their children. Yet here, we have two men, in two separate actions brought by Sue Ann Pell, who appear ready, willing and able to provide for and nurture Stephanie. I believe that we must be guided by the principle of what is in the best interest of Stephanie. I cannot say that the majority's ultimate result is incorrect, but I am of the opinion that the continuation of these actions separately may result in an unconscionable injustice, an inconsistent result, and judicial inefficiency.
¶ 38. The benefit of such consolidation is that Stephanie may receive sufficient financial resources, and she may continue a loving and nurturing relationship with the man she has grown to know as her father. Instead, by allowing these cases to continue down separate tracks, we risk the opposite result  Stephanie may have less than adequate financial support, and she may no longer have a man in her life that she knows as "Dad." I am not willing to risk such result. I am confident that the consolidation will ensure Stephanie's best interest is achieved.
¶ 39. While I recognize the need to achieve finality, I agree with the chancellor that the child will be the person to suffer. The sole purpose of the consolidation would be to ensure that the child's best interest is protected and that the child does not suffer. I believe that this purpose is significant. Accordingly, pursuant to Mississippi Rule of Appellate Procedure 3(b), I would sua sponte consolidate this appeal and Pell v. Pell for further consideration by this Court or the supreme court. Under these circumstances, I cannot accept the decision of the majority, and I dissent.