# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01695-COA

**JASON GREER**                                           **APPELLANT**

**v.**

**TRISTA WILKINSON GREER**                           **APPELLEE**

DATE OF JUDGMENT:       10/11/2019
TRIAL JUDGE:       HON. D. NEIL HARRIS SR.
COURT FROM WHICH APPEALED:       JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       JAMES L. FARRIOR III
ATTORNEY FOR APPELLEE:       G. CHARLES BORDIS IV
NATURE OF THE CASE:       CIVIL - DOMESTIC RELATIONS
DISPOSITION:       AFFIRMED - 03/02/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1. Jason Greer challenges the chancery court's grant of divorce to his wife, Trista Greer. He argues that the chancery court erred by not determining the paternity of the second child born to the marriage before granting the divorce.

## FACTS

¶2. Jason and Trista Greer had one son together before Trista filed for divorce. During the couple's attempts at reconciliation, Trista became pregnant. She gave birth to a baby girl in April 2018 and gave her daughter Jason's surname. However, because the couple were separated at the time, Jason questioned the baby's paternity. During the divorce proceedings, he requested an order for genetic testing to determine whether he was the father.

¶3.    The request was granted on October 2, 2018.  The court ordered the parties to submit to genetic testing within thirty days of the order being entered.  The court further ordered Jason to schedule and pay for the testing.  By the time of the divorce hearing—a year later in October 2019—Jason had failed to do either.  He also did not appear at the hearing.

¶4.    In his absence, the chancery court granted Trista a divorce against Jason on adultery grounds.  The court held that both children were "born to the marital union" and ordered Jason to pay child support.  Jason was also found to be in contempt for failing to pay child support and daycare costs as required by an earlier temporary order.

¶5.    Jason now appeals the grant of divorce.  He argues that the chancery court erred by granting the divorce before determining the paternity of the child born in April 2018.

## STANDARD OF REVIEW

¶6.    "We will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous." *Williams v. Williams*, 843 So. 2d 720, 722 (¶10) (Miss. 2003).

## DISCUSSION

¶7.    Jason argues that the chancery court erred by failing to determine paternity before granting the divorce.  He also alleges that because the court failed to determine paternity, the court's grant of divorce was not a final judgment.

### I.    Jason failed to cite supporting legal authority.

¶8.    In his brief, Jason cited no legal authority to support his claims that the lower court

2

failed to determine paternity and that the grant of divorce was not a final judgment.

¶9. "The Mississippi Supreme Court has held that it is the duty of the appellant to provide authority in support of an assignment of error." *Herrin v. Perkins*, 282 So. 3d 727, 732 (¶21) (Miss. Ct. App. 2019). "Failure to cite legal authority in support of an issue is a procedural bar on appeal." *Id*. at 733 (¶21). "Any failure to cite authority in support of an argument precludes consideration of the issue on appeal." *Id*.

¶10. Jason only cited to two cases in support of his arguments: *Scally v. Scally*, 802 So. 2d 128 (Miss. 2001), and *M.W.F. v. D.D.F.*, 926 So. 2d 897 (Miss. 2006). In *Scally*, there was no question raised regarding whether the chancery court had addressed all issues presented; rather the matter turned on which of the chancery court's orders was a final judgment. *Scally*, 802 So. 2d at 130 (¶¶7-10). Further, the case does not mention any issues of paternity. *Id*.

¶11. *M.W.F.* is also inapplicable. There, the Supreme Court reversed because the chancery court's "judgment of divorce was not certified as a final judgment pursuant to the provisions of Miss. R. Civ. P. 54(b)." *M.W.F.*, 926 So. 2d at 900 (¶6). The judgment in that case only addressed the issue of divorce, and did not mention the issue of paternity. *Id*. at 899 (¶3). Further, this case was not bifurcated. The lower court entered a "Final Judgment of Divorce," which addressed all of the issues before it.

## II. Jason waived his right to challenge paternity.

¶12. Jason argues that the chancery court erred by failing to determine the paternity of Trista's daughter before granting the divorce.

¶13. "There is a rebuttable presumption of the legitimacy of a child born during the course of a marriage." *Rafferty v. Perkins*, 757 So. 2d 992, 995 (¶10) (Miss. 2000). "The presumption of legitimacy is one of the strongest known to our law." *Id.* (quoting *Karenina v. Presley*, 526 So. 2d 518, 523 (Miss. 1988)). A presumed or legal father may bring an action against the mother to disestablish his own paternity. *R.E. v. C.E.W.*, 752 So. 2d 1019, 1020-21 (Miss. 1999). Or, "[i]n any case in which paternity has not been established, the court, on its own motion or on motion of [the parties], shall order the mother, the alleged father[,] and the child or children to submit to genetic tests and any other tests which reasonably prove or disprove the probability of paternity." Miss. Code Ann. § 93-9-21(2) (Rev. 2018). "If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order for genetic testing as the rights of others and the interest of justice require." *Id.*

¶14. Trista and Jason were separated at the time that the daughter was conceived, but they were still legally married and had admittedly made attempts to reconcile. Jason challenged the daughter's paternity during the divorce proceeding and requested an order for genetic testing. The request was granted, but Jason failed to comply with the order. He did not schedule, pay for, or even submit to genetic testing. Therefore, Jason waived his right to genetic testing, and the chancery court properly resolved the question of paternity against him.

### III. The lower court's order was a final judgment.

¶15. Jason argues that "since the paternity issue was not resolved, the Judgment of Divorce

4

was not a final judgment." However, the chancery court did determine paternity. In accordance with the long-held "presumption of the legitimacy of a child born during the course of a marriage," the court determined that Jason was the father of the daughter born in April 2018. *Rafferty*, 757 So. 2d at 995 (¶10). In its order, captioned "Final Judgment of Divorce," the lower court resolved all of the issues before it including divorce, paternity, child-support, and child-custody. When all issues are addressed, the judgment is final. *Cf. M.W.F.*, 926 So. 2d at 900 (¶4) (holding that "a trial court order which disposes of less than all of the claims against all of the parties . . . is interlocutory").

¶16. Accordingly, the judgment of the Jackson County Chancery Court is **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR.**