MYERS, P.J.,
for the Court.
¶ 1. At issue in this appeal is whether the Chancery Court of Sunflower County erred in denying Dorothy Ray and Richard Gregory Ray’s[1] petition for redetermination of heirs of the decedent, Jennifer Marie Ray. Robert Dean Ray, individually and on behalf of Floyd Malcolm Ray, II and David Glen Ray[2], argues that he is entitled to interest from the date that the Georgia relatives’ petition for redetermination of heirs was denied until the date of final adjudication in this Court, to be charged against and deducted from the Georgia relatives’ share in the proceeds of the wrongful death claim for the death of Jennifer Ray. Finding that the chancellor did not err in denying the Georgia relatives’ petition for redetermination of heirs, we affirm. We further decline to find that the chancellor erred in denying the Texas relatives’ motion for interest to be taxed on the Georgia relatives’ eventual proceeds of the wrongful death suit settlement.
PROCEDURAL HISTORY AND UNDERLYING FACTS
¶ 2. Jennifer Marie Ray died in a motor vehicle accident in Sunflower County on August 6, 2008. Jennifer was survived by her mother, Dorothy Ray, and five half-siblings-two on her mother’s side and three on her father’s side. On February 26, 2004, one of Jennifer’s half-siblings on her father’s side, Robert Dean Ray, petitioned and was appointed as administrator of her estate and was issued letters of administration by the Chancery Court of Sunflower County. Thereafter, Robert filed a petition to determine heirs and approve the wrongful death claim on behalf of the estate. A hearing was held on the petition on April 28, 2004, and counsel for Jennifer’s mother and all five of her half-siblings were present. Thereafter, the chancellor issued a decree adjudicating Jennifer’s heirs-at-law to be her mother and all five half-siblings. Additionally, a decree was issued finding Jennifer’s legal residence at the time of death to be Sunflower County, Mississippi, and holding that the Mississippi Wrongful Death Statute applies to the claims involving Jennifer’s death.
¶ 3. On July 29, 2004, Jennifer’s mother, Dorothy, and half-brother, Richard Ray, filed a wrongful death action in the Circuit Court of Sunflower County. Approximately two weeks after filing the complaint, Dorothy and Richard’s attorney withdrew his representation in the chancery court and the circuit court cases and they remained unrepresented until their new counsel filed a notice of appearance in the circuit court on December 17, 2004. Thereafter, Dorothy and Richard sought a ruling from the circuit court that Jennifer’s wrongful death suit jurisdiction lay in *23 Georgia, contradicting the chancery court order finding that Mississippi was the proper jurisdiction for the wrongful death suit. The circuit court declined Dorothy and Richard’s request, holding that the chancery court decree adjudicating the jurisdiction to be in Mississippi was not subject to collateral attack.
¶4. After the circuit court declined to find that jurisdiction for the wrongful death suit was in Georgia, counsel for Dorothy and Richard entered an appearance in the chancery court action and sought to set aside and vacate the decree determining the heirs by filing a petition for redetermination of Jennifer’s heirs on September 26, 2005. This petition for re-determination of heirs was premised upon the discovery of new evidence, namely that Jennifer’s residency was in Georgia prior to her death and that an error occurred in determining that Jennifer’s heirs included her half-siblings under Georgia and Mississippi law. The chancellor denied Dorothy and Richard’s petition and, from this denial, they now appeal.
¶ 5. During the pendency of the litigation in the circuit and chancery courts, a settlement was reached in the wrongful death action filed in the circuit court among all six of the wrongful death beneficiaries and the defendants. However, the defendants of the wrongful death action were unwilling to complete settlement and disburse the settlement funds until final resolution of this appeal.
¶ 6. In this appeal, the Georgia relatives assert that the chancery court abused its discretion in finding that a redetermination of heirs was not warranted. While the Georgia relatives recognize that their petition for redetermination of heirs was untimely, as it was filed approximately seventeen months after the chancellor’s determination of heirs, they argue that extraordinary and compelling circumstances exist so as to warrant the grant of their petition pursuant to Mississippi Rule of Civil Procedure 60(b)(6). In support of their argument, the Georgia relatives argue that the evidence clearly shows that the chancery court erred in determining that Jennifer was a resident of Mississippi and that the decree failed to determine the wrongful death beneficiaries of Jennifer. In response, the Texas relatives argue that the trial court correctly denied the untimely petition for redetermination of heirs because no extraordinary or compelling circumstances exist so as to justify such relief pursuant to Mississippi Rule of Civil Procedure 60(b)(6). Additionally, the Texas relatives argue that even if we find that the chancery court should have granted the Georgia relatives’ petition for rede-termination of heirs, that the decedent’s heirs would remain the same, thus the Georgia relatives are due no relief from the chancery court decree. Lastly, the Texas relatives seek interest in the amount of eight percent to be charged against the Georgia relatives’ share of the wrongful death benefits.
DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN DENYING THE GEORGIA RELATIVES’ PETITION FOR REDETERMINATION OF HEIRS?
¶ 7. Mississippi Rule of Civil Procedure 60(b) provides for relief from a judgment based upon the showing of extraordinary and compelling circumstances. Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998). An appellate court is to review the grant or denial of a Rule 60(b) motion for an abuse of discretion. R.K. v. J.K., 946 So.2d 764, 776(¶ 35) (Miss.2007). A court has the power under Rule 60(b) to vacate a final judgment, order or proceeding to promote the ends of justice in certain circumstances enumerated by the rule which include mis *24 take, inadvertence, and newly discovered evidence. In the event relief is warranted for the discovery of new evidence, such a motion must be made within six months of the entry of the judgment. M.R.C.P. 60(b). Additionally, the Rule allows a decree to be vacated for “any other reason justifying relief from the judgment,” but the motion for relief must be made within a “reasonable time.” M.R.C.P. 60(b). The Fifth Circuit has interpreted the clause “any other reason” contained in the federal counterpart Federal Rule of Civil Procedure 60(b)(6) to our Mississippi Rule of Civil Procedure 60(b)(6) to “refer[ ] to any other reason than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion.” Briney, 714 So.2d at 966 (quoting Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 747 (5th Cir.1995)). “However, Rule 60 is not a means for those who had procedural opportunity for remedy under other rules and failed, without cause, to pursue such avenues.” R.K., 946 So.2d at 776(¶ 35). A trial court, in its consideration of a mov-ant’s petition for relief under Rule 60(b), must make the following considerations before granting or denying such a motion:
(1) that final judgments should not be lightly disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are any intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.
R.K., 946 So.2d at 776(¶ 35).
¶ 8. The Georgia relatives submit to this Court that they should have been granted relief from the determination of heirs because the chancellor misapplied the controlling law of intestacy when determining that Jennifer was a resident of Mississippi at the time of her death and Jennifer’s mother and five half-blooded siblings were entitled to receive a portion of Jennifer’s property. The Texas relatives submit to the court that the Georgia relatives showed no basis for their significant delay in filing their motion for redetermination and that the Georgia relatives’ arguments also fail on the merits. In response to the Texas relatives’ argument that the petition for redetermination was brought outside of the applicable time limit, the Georgia relatives argue that the Mississippi Supreme Court has allowed a party three years to file a motion to set aside an order under Rule 60(b)(6) in the case of Briney, 714 So.2d 962.
¶ 9. In Briney, the supreme court provided the framework for determining when “a reasonable time” had elapsed. The court stated,
What constitutes reasonable time must of necessity depend upon the facts in each individual case. The Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.
Briney, 714 So.2d at 967(¶ 14) (quoting Heirs-at-Law & Beneficiaries of Gilbert v. Dresser Industries, Inc., 158 F.R.D. 89 (N.D.Miss.1993)). Briney argued that a legal error had occurred due to the trial court’s erroneous application of the controlling law, resulting in a substantial injustice. Once Briney gained standing to challenge the order of the circuit court when she was appointed the successor ad-ministratrix, she then acted quickly and *25 moved to vacate the trial court order eleven days later. The supreme court found that because Briney had a valid argument on the merits of the case, the trial judge abused his discretion when he denied the Rule 60(b) motion, although it was filed nearly three years after the lower court’s order. At the time the “reasonableness clock” began ticking Briney had legal standing to challenge the circuit court’s order.
¶ 10. In the case sub judice, the Georgia relatives waited approximately seventeen months to file their petition for rede-termination of heirs after the chancery court issued its decree. The Georgia relatives rely upon the position that Jennifer was incorrectly deemed a Mississippi resident and that even if the residency was correctly decided, that the law of intestacy dictates that her mother, Dorothy Ray, is the only proper beneficiary of the wrongful death claim. We find that the Georgia relatives are in error on both of their assertions.
A. Residency
¶ 11. The chancery court determined that Jennifer was a resident of Mississippi in its April 28, 2004 decree. At the hearing on the matter, testimony was taken on the issue of whether Jennifer was a resident of Mississippi from her half-brother and administrator of her estate, Robert Dean Ray, and from Jennifer’s friend's mother, Anice Carpenter Powell, and several exhibits were introduced in the matter. Anice Powell testified regarding Jennifer’s intentions to remain in Sunflower County permanently. The testimony provided that Jennifer was a friend of Powell’s daughter and that she had recently moved to a rented room in the Powell’s home. Testimony and exhibits provided that by the time of Jennifer’s death, she had registered to vote in Sunflower County, was planning to getting a Mississippi driver’s license and planned to take the ACT in preparation to enroll in nursing school. Jennifer had applied for food stamps in Mississippi and the application was introduced into evidence. No contradictory testimony or exhibits were produced refuting the evidence before the chancery court. At the close of evidence, the court ruled from the bench that Jennifer’s legal residency was Sunflower County. Later, the ruling would be incorporated in a written decree.
¶ 12. In support of their position that the chancellor erred in finding that Jennifer was a resident of Mississippi, the Georgia relatives argue that newly discovered evidence regarding Jennifer’s residency came to light after the chancery court ruling. Newly discovered evidence is defined in Mississippi Rule of Civil Procedure 60(b) as “evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).” A Rule 60(b) motion based on newly discovered evidence must be brought within six months of the original decree or the motion is time barred. As stated supra, the Rule 60(b) motion based on newly discovered evidence was brought outside the required timetable and thus should be dismissed for this reason. However, procedural bar notwithstanding, the merits of the Georgia relatives’ claim fail as well. The Georgia relatives put forward assertions that the chancellor erred in her determination that Jennifer was a resident of Mississippi, namely, because Jennifer still retained a Georgia driver’s license, the accident report and death certificate listed Jennifer as a resident of Georgia, and because Jennifer would have been required to pay out-of-state tuition for the fall semester of 2003 at Mississippi Delta Community College. Each of the aforementioned reasons cited by the Georgia relatives in their motion seeking a de *26 termination that Jennifer was a Georgia resident at the time of her death was easily discoverable by the exercise of minimum due diligence and cannot qualify as “newly discoverable evidence.” After our review of the record, we cannot find that, based upon the evidence before the court, the chancellor erred as a matter of law in refusing to find that Jennifer was a resident of' Georgia at the time of her death.
B. Wrongful Death Beneficiaries
¶ 13. The Georgia relatives point this Court to several statutory provisions regarding descent and distribution in support of their position that only Jennifer’s mother, Dorothy Ray, is the proper beneficiary of the wrongful death claim settlement proceeds. The Georgia relatives further assert that only Jennifer’s mother is the proper beneficiary of the wrongful death claim because (1) Jennifer was an illegitimate child, (2) because the status of all five of Jennifer’s siblings was half-blood and (3) because Jennifer never had any contact with her half-siblings on her father’s side during her lifetime.
¶ 14. We find the Georgia relatives’ position regarding the laws of intestacy regarding descent and distribution is incorrect as a matter of law because the proper course of determining the wrongful death beneficiaries of Jennifer necessarily involves a reading of the wrongful death beneficiary statute. A wrongful death action is a separate action from the estate of the deceased, therefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate’s estate. Our wrongful death statute reads in pertinent part:
Damages for the injury and death of a married man shall be equally distributed to his wife and children, and if he has no children all shall go to his wife; damages for the injury and death of a mar-
ried woman shall be equally distributed to the husband and children, and if she has no children all shall go to the husband; and if the deceased has no husband or wife, the damages shall be equally distributed to the children; if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.... There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree.
[[Image here]]
The provisions of this section shall apply to ... the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
Miss.Code Ann. § 11-7-13 (Rev.2004) (emphasis added).
¶ 15. We recognize, though, that if Jennifer Ray was an illegitimate child, in order for her half-siblings on her father’s side to inherit, these half-siblings would have to establish their right to inherit as kindred of her deceased father, Floyd M. Ray, pursuant to Mississippi Code Annotated section 91-1-15. However, we can find no support, other than the Georgia relatives’ assertions, indicating that Jennifer was an illegitimate child. In fact, proof was offered to the contrary and introduced at the hearing regarding the heirship determination. The record contains a copy of a final decree of divorce that was introduced into evidence, during the hearing adjudicating Jennifer’s heirs-at-law, that indicates that Jennifer was born into the marriage of her parents. In the divorce *27 decree, the Texas state court made a specific finding that Jennifer’s parents were married and then proceeded to dissolve the marriage. Based on the record before us, we can find no merit to the Georgia relatives’ argument that Jennifer was an illegitimate child, so as to preclude her father’s kindred from qualifying as wrongful death beneficiaries.
¶ 16. Next, we address the Georgia relatives’ argument concerning the status of Jennifer’s siblings as half-blood. The Georgia relatives point to Mississippi Code Annotated sections 91-1-3 (Rev. 2004) and 91-1-5 (Rev.2004) in support of their assertion that Jennifer’s full-blooded mother should benefit from the wrongful death suit to the exclusion of Jennifer’s half-blooded siblings because her mother is one degree of separation from Jennifer, whereas Jennifer’s half-siblings are of two degrees of separation. This statutory scheme provides that “kindred of the whole-blood, in equal degree, shall be preferred to the kindred of the half-blood in the same degree.” Miss.Code Ann. § 91-1-5. However, we find that the Georgia relatives’ reliance upon this section is misguided within the analysis of wrongful death beneficiaries, as sections 91-1-3 and 91-1-5 of the Mississippi Code Annotated “have been the controlling law in Mississippi concerning intestate succession and half-bloods since 1848.” Jones v. Stubbs, 434 So.2d 1362, 1364 (Miss.1983) (emphasis added). However, our legislature has created another statutory device that is controlling law concerning a wrongful death suit and half-bloods. Our wrongful death statute, embodied in Mississippi Code Annotated section 11-7-13, specifically provides that “there shall not be, in any case, a distinction between the kindred of the whole and half-blood of equal degree” and that “if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.” A reading of the controlling statute makes clear that application of the wrongful death statute in this case provides that Jennifer’s wrongful death beneficiaries include all five of her half-siblings, as well as her mother. Furthermore, even if the Georgia relatives assertions that Jennifer’s half-siblings on her father’s side never had any contact with her, they are still statutorily entitled to their respective shares of Jennifer’s estate. See Estate of Yount v. McKnight, 845 So.2d 724(¶ 10) (Miss.Ct.App.2003) (ruling that the half-brother could share in the wrongful death settlement proceeds pursuant to the statutory entitlement of Mississippi Code Annotated section 11-7-13, even though the decedent had never known of the existence of that half-brother).
¶ 17. The finding that Jennifer’s residency was in Sunflower County, Mississippi was correctly determined. Thus, the chancellor properly retained jurisdiction over the determination of heirs. Additionally, we find that the chancellor did not err in holding that Jennifer’s wrongful death beneficiaries are her mother and five half-blooded siblings. Accordingly, we affirm the denial of the Georgia relatives’ petition for redetermination.
II. CONSOLIDATED APPEAL: WHETHER THE TEXAS RELATIVES ARE ENTITLED TO INTEREST AT THE RATE OF 8% PER ANNUM FROM DECEMBER 30, 2005, TO THE DATE OF FINAL ADJUDICATION IN THE APPELLATE COURT, TO BE CHARGED AGAINST AND DEDUCTED FROM PETITIONER’S SHARES OF THE WRONGFUL DEATH CLAIM?
¶ 18. On December 30, 2005, the chancery court denied the Georgia rela *28 tives’ Rule 60(b) motion, which sought re-determination of Jennifer’s residency and heirs. At this same time in the Circuit Court of Sunflower County, the Texas relatives had reached a settlement with at least one of the defendants in the wrongful death action; however, the Georgia relatives were unwilling to execute a release in the settlement and allow the funds inter-pled into an interest bearing account in the chancery court. The Texas relatives subsequently sought a ruling from the chancery court to be awarded legal interest to be taxed on the eventual proceeds of the wrongful death settlement in the circuit court action from December 30, 2005, to the date of final adjudication of the chancery court’s denial of the redetermination of heirs in this Court nun pro tunc. The chancery court denied the Texas relatives’ motion for an award of interest and the Texas relatives now appeal this matter, which has been consolidated with the case above.
¶ 19. The Texas relatives argue that the chancellor had the broad equitable authority to grant a judgment of interest to be taxed on the amount of settlement proceeds that have remained undistributable since the Georgia relatives were denied their petition for redetermination of heirs and reconsideration of Jennifer’s residency. Additionally, the Texas relatives assert that pursuant to Mississippi Rule of Appellate Procedure 37, the interest judgment is warranted because our affirmance of the denial of the Georgia relatives’ Rule 60(b) motion is tantamount to affirming a money judgment.
¶ 20. Mississippi Rule of Appellate Procedure 37 provides this Court with the authority to enter a judgment of interest if we affirm judgment for money in a civil case. However, this case is not one affirming a money judgment, but rather we are affirming a chancellor’s determination of a Rule 60(b) motion challenging the finding of a decedent’s residency and an adjudication of heirship. Had the chanc,el-lor granted the Texas’ relatives’ motion for interest to be taxed against the Georgia relatives’ shares, his ruling would have been premature. At this point in the circuit court wrongful death claim litigation, the cause of action against the defendants had not yet been dismissed pursuant to a settlement. There were no available, tangible settlement funds to be deposited into the decedent’s estate or into the chancery court interpleader fund. Only after the funds are deposited into the chancery court can the chancellor then consider taxing the interest against the shares of the Georgia relatives. We cannot find that the chancellor erred in denying the Texas relatives’ motion for interest in the chancery court action because the issue of his denial of the Georgia relatives’ motion was still outstanding on appeal in this Court, and affirm accordingly.
¶ 21. THE JUDGMENTS OF THE CHANCERY COURT OF SUNFLOWER COUNTY ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DOROTHY RAY AND RICHARD GREGORY RAY.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS, AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART.

. Dorothy Ray and Richard Gregory Ray are residents of the state of Georgia. For the sake of clarity within the opinion, the appellants, Dorothy Ray and Richard Gregory Ray, will be referred as the “Georgia relatives.’’

. Robert Dean Ray, Floyd Malcolm Ray, II and David Glen Ray are residents of the state of Texas. The appellees will hereinafter be referred to collectively as the "Texas relatives” for the purpose of our discussion.