# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01895-SCT

*IN THE MATTER OF THE ESTATE OF JUSTIN
MICHAEL SMITH, DECEASED: HALLEY
SMITH, A MINOR BY AND THROUGH HER
MOTHER HOLLY SMITH*

*v.*

*PAYLN MAE SMITH, A MINOR BY AND
THROUGH HER MOTHER AND NEXT FRIEND,
AMY ROLLINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/04/2012 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN, JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BRADLEY RUSSELL BOERNER |
| ATTORNEY FOR APPELLEE: | STEVEN HISER FUNDERBURG |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 01/23/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Following a final order from the Chancery Court of Lincoln County that Halley Smith

is not a wrongful-death beneficiary of Justin Smith, Halley appeals and asks this Court to

judicially declare that an *in loco parentis* child qualifies as a wrongful-death beneficiary

under Mississippi Code Section 11-7-13.  Halley argues that "[p]ublic policy and the best

interests of Mississippi children demand that *in loco parentis* children should be included as

wrongful death beneficiaries of their psuedo-parent."[1] Finding that an *in loco parentis* child does not qualify as a wrongful-death beneficiary, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

¶2. Justin Michael Smith, the decedent, married Holly Kyzar Smith in October 2000. Two months later, Holly gave birth to Halley Ellas Smith. Justin signed the birth certificate as Halley's father. For eight years, Justin supported Halley financially and actively participated in Halley's life. Justin also claimed Halley as a dependent on his tax returns for seven years. Halley lived with Justin and Holly for almost eight years.

¶3. Holly and Justin separated in 2007, and a complaint for divorce was filed. Unbeknownst to Holly, Justin sought a DNA test which established that Justin was not Halley's father. Holly questioned the results. As a part of the divorce proceeding, a subsequent DNA test[2] was ordered on September 25, 2008, that confirmed that Justin was not Halley's biological father. Separately, an additional DNA test on February 5, 2009 established that Joseph Montgomery, not Justin, was Halley's biological father.[3] Thereafter, Justin's name was removed from Halley's birth certificate, and Montgomery was listed as Halley's biological father. Montgomery also was awarded visitation rights and ordered to pay

---

[1]Appellant's Brief at 2.

[2]On September 25, 2008, Justin and Holly entered an agreed order for new paternity testing. On October 13, 2008, they filed with the court a Genetic Test Report "where Justin was found to have 0% probability of paternity of Halley."

[3]The February 5, 2009, DNA test established a 99.997% probability that Joseph Montgomery was the father of Halley.

2

child support. Justin died on July 19, 2009. At the time of his death, divorce had not been granted.

¶4.    Holly was appointed administratrix of Justin's estate in January of 2010. Holly filed a petition to establish heirship, naming herself and only Payln Mae Smith, Justin's natural daughter, as Justin's known heirs. Holly made no claim that Halley was an heir of Justin. The chancery court, on April 6, 2010, entered an order, at Holly's behest, declaring that Holly and Payln were the sole heirs.

¶5.    On September 22, 2011, Holly filed a Petition For Authority To Settle Doubtful Claims, on behalf of Palyn.  The chancery court approved the settlement and directed the distribution of funds equally to Holly, individually, and Holly, as guardian of Palyn. On the very same day, without serving the parties the court had authorized to be released, Holly filed a Petition For Reconsideration Of Heirship Determination, stating that "[a]n issue has now arisen as to whether Halley Ellas Smith, a minor, is also an heir-at-law of decedent Justin Michael Smith. Specifically, Halley Ellas Smith was born on December 29, 2000, during the marriage of the Decedent and Holly Kyzar Smith (Petitioner), and was treated as the daughter of Justin Michael Smith."  Holly's act of filing the petition for reconsideration after soliciting and obtaining authority to settle outstanding claims raises a host of other issues, as raised by the released parties, who intervened.  However, as the trial court did not address these issues, and as its ruling was otherwise dispositive, neither shall we.  We examine only the judgments before us. The Court order under attack and presented to the trial court for reconsideration

3

was the April 6, 2010, decree in which Holly and Palyn were declared to be Justin's sole heirs-at-law.

¶6. After the court appointed *a guardian ad litem* to represent Halley, Halley's *guardian ad litem* also filed a motion to reconsider the heirship determination of April 6, claiming that "Halley Smith is the *in loco parentis* child of Justin Smith, deceased, and should be adjudicated to be one of his heirs at law and wrongful death beneficiaries . . . ." Subsequently, the chancery court held a hearing on the motions and entered an order finding that:

> Halley is the *in loco parentis* daughter of Justin Smith; . . . Halley is not the biological daughter of Justin Smith, as the presumption of paternity has effectively been rebutted; . . . an *in loco parentis* child of a deceased individual does not stand as a wrongful death beneficiary of that deceased individual; therefore, Halley is not a wrongful death beneficiary of Justin.

¶7. Halley then filed another motion to reconsider the order denying reconsideration of the April 6 order, which the chancellor denied. In her appeal, she claims that "*in loco parentis* children should be included as wrongful-death beneficiaries of their pseudo-parent." The parties do not contest the chancellor's determination that Halley was an *in loco parentis* child of Justin.[4] Instead, Halley invites this Court to judicially amend the wrongful-death statute to include *in loco* children as persons entitled to recover under Section 11-7-13. We decline.

## STANDARD OF REVIEW

---

[4] Halley concedes in her brief that "[t]he child was correctly found to be the *in loco parentis* child of [Justin]." (Appellant's Brief at 2).

¶8.    The issue before the Court is whether an *in loco parentis* child qualifies as a wrongful-death beneficiary under Mississippi's wrongful-death statute. Because this is an appeal from chancery court on an interpretation of a statute, the standard of review is *de novo*. **Miss. Dep't of Transp. v. Allred**, 928 So. 2d 152, 154 (Miss. 2006).

## DISCUSSION

¶9.    This Court has recognized the doctrine of *in loco parentis* for more than a century. **Fortinberry v. Holmes**, 42 So. 799, 799 (Miss. 1907). Specifically, the doctrine is defined as follows:

> A person in loco parentis may be defined as one who has assumed the status and obligations of a parent without a formal adoption. The rights, duties and liabilities of one standing in loco parentis are the same as those of a natural parent. Whether the relationship exists is a matter of intention and of fact to be deduced from the circumstances of the particular case.

**Farve v. Medders**, 128 So. 2d 877, 879 (Miss. 1961).

¶10.    In short, Halley is not a wrongful-death beneficiary because she is not Justin's child, as defined in Mississippi Code Section 11-7-13. *See* Miss. Code Ann. § 11-7-13 (Rev. 2004). We  strictly construe Section 11-7-13. **Smith v. Garrett**, 287 So. 2d 258, 260 (Miss. 1973). Moreover, this Court lacks the power to expand the definition of "child." *See* **Burley v. Douglas**, 26 So. 3d 1013, 1020 (Miss. 2009). The relevant part of the statute is as follows:

> . . . Damages for the injury and death of a married man shall be equally distributed to his wife *and children* . . . . The provisions of this section shall apply to *illegitimate* children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.

5

. . .

> Any rights which a blood parent or parents may have under this section are hereby conferred upon and vested in an *adopting* parent or adopting parents surviving their deceased adopted child, just as if the child were theirs by the full-blood and had been born to the adopting parents in lawful wedlock.

Miss. Code Ann. § 11-7-13 (Rev. 2004) (emphasis added). In addition to covering natural children, the statute includes express language that brings both adopted children and illegitimate children within the purview of "children." The statute is silent as to *in loco* children. Since this Court must strictly construe the statute, we find that *in loco* children do not fall within the definition of children in Mississippi's wrongful-death statute.

¶11.    Halley argues that *in loco* children should be treated as adoptive children and points out that adoptive children may inherit from both their natural and adoptive parents. Although adoptive children may inherit from both their natural and adoptive parents,[5] the same privileges do not extend to *in loco* children. Adoption is a legal process with specific formalities that create a new parent-child relationship, as opposed to an *in loco parentis* relationship, which lacks the formalities of adoption. *See* Deborah Bell, *Mississippi Family Law* § 17 (1st ed. 2005). Of prime importance, the rights of the biological parents *must* be terminated as a prerequisite to adoption. *Id.* This did not occur in the case *sub judice*. Montgomery, the natural father, did not terminate his parental rights to Halley. Far from it,

---

[5]***Alack v. Phelps***, 230 So. 2d 789, 793 (Miss. 1970) ("We think the intent of the legislature is clear; they intended for the [adopted] child to continue to inherit from his natural parents.")

6

he pays child support and has visitation rights with Halley. Thus, Halley is not an adoptive child.

¶12. Halley also urges this Court to follow the workers' compensation statute and the Longshoremen's and Harbor Workers' Compensation Act. This Court found *in loco* children as proper beneficiaries under the workers' compensation statute. However, the Workers' Compensation statute provides express language[6] that covers *in loco* children. ***Longleaf Forest Prods., Inc. v. Hopkins***, 349 So. 2d 523, 525 (Miss. 1977). Likewise, the court in ***Ryan-Walsh*** allowed an *in loco* child to recover based on similar express language[7] in the Longshoremen's and Harbor Workers' Compensation Act. ***Ryan-Walsh Stevedoring Co., Inc. v. Trainer***, 601 F. 2d 1306, 1318 (5th Cir. 1979). As discussed *supra*, Mississippi's wrongful-death statute lacks such language.

¶13. Finally, Halley points to statutes and opinions from other states to support allowing *in loco* children to recover as wrongful-death beneficiaries. The Ohio Supreme Court did allow an *in loco* child to recover as a wrongful-death beneficiary. ***Lawson v. Atwood***, 536 N.E. 2d 1167, 1170 (Ohio 1989). However, the Ohio court further ruled that such a claim can survive *only* if "the natural parents of the child have disclaimed or abandoned parental rights to the child." ***Id.*** No abandonment occurred here. Finally, both Arkansas and Delaware

---

[6]"Child" shall include . . . a child in relation to whom the deceased employee stood in the place of a parent for at least one (1) year prior to the time of injury." Miss. Code Ann. § 71-3-3(1) (Rev. 2011).

[7]"Child" shall include . . . a child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury." 33 U.S.C. § 902(14) (2009).

include *in loco* relationships within the express definition of wrongful-death beneficiaries, unlike the statute in the present case.[8]

¶14.    The dissent revisits an alternative argument filed in the trial court by Halley, but not advanced before this Court on appeal. The only issue presented on appeal was whether "[a]n *In Loco Parentis* child is a wrongful death beneficiary."[9]  Halley, in the second sentence of her brief, states "[t]he child was correctly found to be the *in loco parentis* child of [Justin]." The parties acknowledge that Halley was not the child of Justin. Based on the record, at least three separate DNA tests performed *before* Justin's death established that Justin was not Halley's father. Both a DNA test showing a 99.997 percent likelihood that Montgomery was Halley's father, and a DNA test showing a 0.0 percent chance that Justin was Halley's father were filed in Lincoln County.[10]  Holly also offered sworn testimony that Holly, Justin, and Montgomery all knew that Justin was not Halley's father prior to his death and she did not ask the chancery court to have Halley considered an heir, "since Justin was shown not to be [Halley's] biological father . . . . I just assumed [Halley] would not be entitled to any financial money."

---

[8]Ark. Code Ann. § 16-62-102(d); Del. Code Ann. tit. 10 § 3724(d)(5) (1999).

[9]Apellant's Statement of the Issues, Appellant's Brief at 1.

[10]Only the Montgomery DNA test is in the record. However, Halley, in the Guardian Ad Litem brief, concedes that "On October 13, 2008, a Genetic Test Report was filed . . . where Justin was found to have 0% probability of paternity of Halley."

¶15.   "[DNA] test results may rebut the presumption of legitimacy." *Rafferty v. Perkins*, 757 So. 2d 992, 995 (Miss. 2000). "Mississippi law provides that if the probability of paternity . . . is 98% or greater, there is a rebuttable presumption of paternity." *In re B.N.N.*, 928 So. 2d 197, 200 (Miss. Ct. App. 2006); *See* Miss. Code. Ann. § 93-9-27 (Rev. 2013). "Where scientific evidence points overwhelmingly towards one man as the father of a child, paternity is established; the only matter left to resolve in the paternity action is that of support." *Griffith v. Pell*, 881 So. 2d 227, 230-31 (Miss. Ct. App. 2003) (citing *Rafferty*, 757 So. 2d at 996).   Earlier paternity orders "may be vacated once DNA testing establishes someone other than the named individual is the child's biological father." *Griffith v. Pell*, 881 So. 2d 227, 231 (Miss. Ct. App. 2003) (citing *M.A.S. v. Miss. Dep't. of Human Servs.*, 842 So. 2d 527, 531 (Miss. 2003)).   Considering the unequivocal evidence before the chancellor, it cannot be fairly argued that the learned chancellor erred in finding that the presumption of paternity had been rebutted, nor that Halley is a person entitled to recover under the Section 11-7-13.

¶16.   The dissent cites a descent and distribution case, *Hogan*,[11] which presents issues entirely different than those before us today and opines that "our laws of decent and distribution hold that Halley's legal status at the time of Justin's death would determine whether she was a wrongful death beneficiary."  However, it is "incorrect as a matter of law" to consider descent and distribution cases or statutes governing descent and distribution when

[11]*Hogan v. Buckingham ex rel. Buckingham*, 730 So. 2d 15 (Miss. 1998).

considering a wrongful-death case. ***Ray v. Ray***, 963 So. 2d 20, 26 (Miss. Ct. App. 2007) (finding that the "relatives" position regarding the laws of intestacy regarding descent and distribution is incorrect as a matter of law because the proper course of determining the wrongful death beneficiaries . . . necessarily involves a reading of the wrongful death beneficiary statute.") "A wrongful death action is a separate action from the estate of the deceased, therefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate's estate." ***Ray v. Ray***, 963 So. 2d 20, 26 (Miss. Ct. App. 2007). Assuming *arguendo* that this Court considers descent and distribution statutes, Halley is the illegitimate child of Montgomery, not Justin. Thus, Section 91-1-15(3)(b) of the Mississippi Code and ***Hogan*** both are inapplicable.

¶17. The "determinative issue" in ***Hogan***, as identified by the dissent, "was whether a prior judgment establishing paternity could 'bind the estate pursuant to the *plain language* of *Miss. Code. Ann § 91-1-15(3)(b)* (1994)'" (Diss. Op. ¶ 23) (emphasis added).[12] However, Section 91-1-15 prescribes only how *illegitimate* children can recover from their *natural* parents, which does not apply to the facts of the case *sub judice*. *See* Miss. Code Ann. § 91-1-15(1)(c) (Rev. 2013). An "*illegitimate*" child is defined in Section 91-1-15 as "a person who at the time of his birth was born to *natural* parents *not married* to each other and not legitimized . . . through a proper judicial proceeding." Miss. Code Ann. § 91-1-15(1)(c) (Rev. 2013) (emphasis added). Quite the opposite, Halley was born into a marriage to a

_____

[12]This is quite a distinction from establishing who may bring a wrongful-death action.

father who was not her natural father. "Natural" father is defined as the biological father. Miss. Code Ann. § 91-1-15(1)(d) (Rev. 2013). Justin does not fit the statutory definition of "natural father" as used in Section 91-1-15, nor does Halley, in relation to Justin, meet the definition of "illegitimate" child as defined in the statute. Instead, Halley, as defined in Section 91-1-15, is the illegitimate child of Montgomery. Therefore, Section 91-1-15 can only provide an avenue for Halley to recover from Montgomery, an issue not before this Court today. Moreover, the holding in *Hogan* was that "the language of § 91-1-15(3)(b) makes clear that an *illegitimate* inherits from the kindred of his *natural* father where, as in the present case, there has been a prior adjudication of paternity." *Hogan*, 730 So. 2d at 20 (emphasis added). Thus, neither Section 91-1-15 nor the holding of *Hogan* provides for Halley to inherit from Justin.

¶18.    Neither does *Burley* support the dissent's position. *Burley v. Douglas*, 26 So. 3d 1013, 1015, 1023-24 (Miss. 2009). *Burley* addressed *only* the issue of *standing* to bring a wrongful-death claim, not the ability to recover wrongful-death benefits. *Burley v. Douglas*, 26 So. 3d 1013, 1015 (Miss. 2009). While *Burley* recognized the petitioner as a wrongful-death claimant and an interested party "because of his qualification as an heir-at-law," *Burley* also declared that the petitioner's heir-in-law status did not equate to recovery as a wrongful-death beneficiary. *Id.* at 1021-23 ("Our holding today recognizes the statutory distinction between a party's authority to bring a wrongful-death action and the party's ability to recover damages from it.). The *Burley* court further held that the petitioner's "ability to recover

11

damages . . . is a separate question," from standing. *Id.* at 1023 ("Burley's ability, *or lack thereof*, to seek and/or recover certain damages . . . does not determine the character of his standing as a particular type of wrongful-death claimant.") (emphasis added).

<b><u>CONCLUSION</u></b>

¶19.    Because Mississippi Code Section 11-7-13 does not provide a cause of action for *in loco* children, we affirm the trial court's determination that Halley is not a wrongful-death beneficiary of Justin.

¶20.    **AFFIRMED**.

        **WALLER, C.J., DICKINSON, P.J., CHANDLER AND PIERCE, JJ., CONCUR. LAMAR AND COLEMAN, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, KING AND COLEMAN, JJ.**

        **KITCHENS, JUSTICE, DISSENTING:**

¶21.    I agree that, when a person stands *in loco parentis* to a child, the child does not automatically become a wrongful death beneficiary upon that person's death. *See* Miss. Code Ann. § 11-7-13 (Rev. 2004). However, there was no dispute that Justin was Halley's *presumed* father or that there had been several separate judicial proceedings in which Justin was recognized as Halley's *legal* father. There is no court order before us that disestablished Justin's paternity prior to his death; and, based on our jurisprudence, the post-mortem judicial determination that Montgomery was Halley's biological father would not have dissolved Justin and Halley's legally recognized parent-child relationship that existed during Justin's lifetime, notwithstanding some testimony suggesting that Justin's parental rights and

12

obligations may have been suspended during the divorce proceedings. Because Halley's status as Justin's legal child, and thus her status as a wrongful death beneficiary, requires consideration of relevant matters not in the record, the issue before us cannot be resolved on appeal. Therefore, I respectfully dissent, and would reverse the judgment and remand the case for further proceedings with directions to determine whether the prior adjudications of paternity still were in effect at the time of Justin's death.

¶22. The issue on appeal has been framed as "whether an *in loco parentis* child qualifies as a wrongful-death beneficiary." However, the doctrine of *in loco parentis* does not apply when there is a legally recognized parent. *See Farve v. Medders*, 241 Miss. 75, 128 So. 2d 877 (1961). The majority points out that "at least three separate DNA tests performed *before* Justin's death established that Justin was not Halley's father. Both a DNA test showing a 99.997 percent likelihood that Montgomery was Halley's father, and a DNA test showing a 0.0 percent chance that Justin was Halley's father were filed in Lincoln County." Maj. Op. ¶ 14. The majority thus concluded, "it cannot be fairly argued that the learned chancellor erred in finding that the presumption of paternity had been rebutted. . . ."[13] Maj. Op. ¶ 15. But Montgomery filed a petition to establish paternity[14] more than a month *after* Justin's death. The parties entered an agreed order in this separate action ten months *after* Justin's death.

_____

[13]As noted above, the parties and the chancellor agreed that Justin was presumed to be Halley's father.

[14]The majority is correct that a DNA test was ordered as part of the divorce proceedings. But that was a separate test, focused on Justin's biological relationship *vel non* to Halley, and it did not establish Montgomery as the biological father. Maj. Op. ¶ 3.

13

Halley's mother agreed to the order which established Montgomery as Halley's natural father and awarded Montgomery joint custody and visitation. Justin's estate was not a party to that action, and the order did not make reference to Justin. Even so, the order would not have disestablished paternity for the deceased, *legal* father, which appears to have been Justin's status, as related to Halley, at the time he died.

¶23. In *Hogan v. Buckingham ex rel. Buckingham*, 730 So. 2d 15 (Miss. 1998), the Court addressed this very issue: whether a prior adjudication of paternity could be challenged in heirship proceedings related to distribution of settlement funds for a wrongful death claim. In *Hogan*, 730 So. 2d at 16-17, the administratrix filed a complaint for wrongful death, and after a settlement was reached, the administratrix filed a petition for determination of the wrongful death beneficiaries. The administratrix requested DNA testing to establish the paternity of two alleged beneficiaries, but the chancellor denied the requests. *Id.* at 17. On appeal, this Court noted that the determinative issue was whether a prior judgment establishing paternity could "bind[] the estate pursuant to the plain language of Miss. Code Ann. § 91-1-15(3)(b) (1994)." *Id.* at 20 n.1. The statute since has been amended, but Section 91-1-15(3)(b) has remained the same:

> An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
>
> . . . .
>
> (b) There has been an adjudication of paternity or legitimacy before the death of the intestate[.]

14

Miss. Code Ann. § 91-1-15(3)(b) (Rev. 2013). In a nearly unanimous opinion,[15] the Court affirmed the chancellor's denial of DNA testing, holding that "the defendants had already been determined to be the heirs of [the decedent] as a matter of law." *Hogan*, 730 So. 2d at 20. The opinion further noted that it was of no consequence that paternity had been established by means of two default judgments in unrelated support proceedings. *Id.* Those prior judgments were found to be controlling.

¶24. As in *Hogan*, the parties do not dispute that several court orders established Halley as Justin's daughter,[16] and no court order in the record disestablishes Justin's paternity of Halley, either before or after Justin's death. In the absence of an adjudication otherwise, Halley was Justin's daughter at the time of his death and thus his wrongful death beneficiary. The proceedings to establish Montgomery as Halley's biological father would not have affected her status as an heir, for the relationship with which we ultimately are concerned is the *legal* relationship of Halley and Justin at and before the time of Justin's death. The laws governing descent and distribution provide procedures by which paternity of an illegitimate child may be established after death. *See* Miss. Code Ann. § 91-1-15 (Rev. 2013). However, those laws do not contemplate a procedure to disestablish paternity posthumously.

---

[15] Justice McRae concurred in result only without opinion.

[16] Specifically, the report of the guardian *ad litem* makes reference to several chancery court adjudications finding that Justin was Halley's father. Those judgments and/or orders are not included in the record on appeal.

¶25.    The majority notes that Justin's name was removed from Halley's birth certificate and replaced with Montgomery's name, and that Montgomery was awarded visitation and ordered to pay child support.  Yet these actions did not occur until after Justin's death.  The majority also implies that Justin could have adopted Halley; but, adoption proceedings would have been superfluous, because Justin was Halley's legally recognized father.  Nevertheless, some testimony indicated that Justin's visitation rights and support obligations had been suspended during the divorce proceedings, even though it appears that no ruling had been made regarding the results of a paternity test.[17]  Because the record does not indicate why, or whether, there was an order in the divorce proceedings related to Justin's parental rights and obligations, we cannot know whether the prior adjudications of paternity still were in effect when he departed this life.  If these adjudications were undisturbed, Halley is a wrongful death beneficiary as a matter of law.

¶26.    Further, the majority asserts that *Hogan* and Section 91-1-15(3)(b) are inapplicable, because only the wrongful death statute, not the descent and distribution statutes, applies. For this proposition, the majority cites *Ray v. Ray*, 963 So. 2d 20, 26 (Miss. Ct. App. 2007), from the Mississippi Court of Appeals, which did in fact hold that "it is 'incorrect as a matter of law' to consider descent and distribution cases or statutes governing descent and distribution

---

[17]The majority cites cases holding that prior paternity orders "may be vacated once DNA testing establishes someone other than the named individual" as the child's biological parent. *Griffith v. Pell*, 881 So. 2d 227, 231 (Miss. Ct. App. 2003) (citing *M.A.S. v. Miss. Dep't of Human Servs.*, 842 So. 2d 527, 531 (Miss. 2003)). But here, the record is devoid of any suggestion that the prior orders recognizing Justin as Halley's father had been vacated.

16

when considering a wrongful death case." The Court of Appeals continued, without citation, that "[a] wrongful death action is a separate action from the estate of the deceased, therefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate's estate." *Id.* *Hogan* belies this notion, and this Court has observed that "[t]he heirs at law under our law of descent and distribution are the same as the wrongful death beneficiaries." *Long v. McKinney*, 897 So. 2d 160, 186 n.10 (Miss. 2004).

¶27. The majority further opines that our application of *Hogan* to the present case is misplaced, since "Halley was born into a marriage to a father who was not her natural father," which Mississippi Code Section 91-1-15(d) defines as "the biological father." Maj. Op. ¶ 17. Justin and Holly were married at the time of the birth of Halley–and, indeed, at the time of Justin's death. Thus, Justin may have been her *legal* father at that time. Likewise, at the time of Justin's death, Halley may have been his *legal* child, notwithstanding any biological determination otherwise. If Halley was the legal child of Justin at the time of his death, she is entitled to benefit from the wrongful death proceeds. Again, I do not argue that Halley unequivocally is entitled to benefit from the wrongful death proceeds; I merely state the need for an examination of the existence and content of any judicial determinations of Halley's status prior to Justin's death. If a determination was made that Halley was not legally Justin's child at the time of his death, then she may not be entitled to the proceeds of the wrongful death settlement. But such an examination is, nevertheless, a necessity.

¶28. "Statutory language . . . 'cannot be construed in a vacuum.'" *Roberts v. Sea-Land*, 132 S. Ct. 1350, 1357, 2012 A.M.C. 609, 182 L. Ed. 2d 341 (2012) (citing *Davis v. Mich.*

17

*Dep't of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989). In *Burley v. Douglas*, this Court held that Burley was a proper wrongful death claimant and an interested party for purposes of standing where, "under our laws of intestate descent and distribution, he would have been entitled to inherit property" from his deceased daughter and grandchildren at the moment of their deaths. *Burley v. Douglas*, 26 So. 3d 1013, 1021 (2009) (citing Miss. Code Ann. §§91-1-1 to -31 (Rev. 2004)). Following the reasoning of *Burley*, if Halley *legally* was Justin's child at the moment of Justin's death, she was his wrongful death beneficiary. But we cannot know what Halley's legal status was at the time of Justin's death without examination of the prior chancery adjudications and a determination of whether those prior adjudications were in effect and binding at the moment of Justin's demise.

¶29. The majority criticizes our use of *Burley*, noting its recognition of "the statutory distinction between a party's authority to bring a wrongful-death action and the party's ability to recover damages from it." *Burley*, 26 So. 3d at 1021-23. But the concepts of standing to bring suit and entitlement to damages are not mutually exclusive, as *Burley* recognizes. *Id.* at 1021. Although *Burley* does state that "a 'statutory heir' does not necessarily qualify as a 'listed relative' under Mississippi's wrongful-death statute," a "person who qualifies as a 'statutory heir' is one who is eligible to inherit from the decedent under our intestate descent and distribution statutes, and who therefore may be adjudicated by the chancery court as an heir-at-law of the decedent." *Id.* at n.8 (citing Miss. Code Ann. §§ 91-1-1 to -31 (Rev. 2004); § 11-7-13 (Rev. 2004)). Again, if at the time of Justin's death,

18

Halley was *legally* his daughter, then she is entitled to recover damages pursuant to the wrongful death statute, by virtue of the descent and distribution statute. While the majority manifests apparent comfort in assuming Halley's status at the time of Justin's death, I urge a judicial determination of what her status actually was before this Court decides whether the benefit of wrongful death damages should or should not inure to her.

¶30. The circumstances of this case are unusual. But peculiar fact patterns do not diminish the relationship between our laws of descent and distribution and our wrongful death jurisprudence, which must be considered together when our courts undertake the legal determination of a decedent's wrongful death beneficiaries. *Hogan*, 730 So. 2d at 19-20. In this case, the chancellor found that the presumption of paternity had been rebutted, and that Justin simply had stood *in loco parentis* to Halley. Yet, there was more than a presumption in this case, for Justin's paternity of Halley may have been established as a matter of law. In the absence of a contrary judicial determination while Justin was alive, Halley is a wrongful death beneficiary of Justin Michael Smith, deceased. Given the omissions from the record, I would reverse the judgment and remand the case for the chancellor to examine these prior adjudications to determine whether they still were binding at the time of Justin's death. For these reasons, I respectfully dissent.

**LAMAR, KING AND COLEMAN, JJ., JOIN THIS OPINION.**

19