KITCHENS, Justice,
dissenting:
¶ 21. I agree that, when a person stands in loco parentis to a child, the child does not automatically become a wrongful death beneficiary upon that person’s death. See Miss.Code Ann. § 11-7-13 (Rev.2004). However, there was no dispute that Justin was Halley’s presumed father or that there had been several separate judicial proceedings in which Justin was recognized as Halley’s legal father. There is no court order before us that disestablished Justin’s paternity prior to his death; and, based on our jurisprudence, the post-mor-tem judicial determination that Montgomery was Halley’s biological father would not have dissolved Justin and Halley’s legally recognized parent-child relationship that existed during Justin’s lifetime, notwithstanding some testimony suggesting that Justin’s parental rights and obligations may have been suspended during the divorce proceedings. Because Halley’s status as Justin’s legal child, and thus her status as a wrongful death beneficiary, requires consideration of relevant matters not in the record, the issue before us cannot be resolved on appeal. Therefore, I respectfully dissent, and would reverse the judgment and remand the case for further proceedings with directions to determine whether the prior adjudications of paternity still were in effect at the time of Justin’s death.
¶ 22. The issue on appeal has been framed as “whether an in loco parentis child qualifies as a wrongful-death beneficiary.” However, the doctrine of in loco parentis does not apply when there is a legally recognized parent. See Farve v. Medders, 241 Miss. 75, 128 So.2d 877 (1961). The majority points out that “at least three separate DNA tests performed before Justin’s death established that Justin was not Halley’s father. Both a DNA test showing a 99.997 percent likelihood that Montgomery was Halley’s father, and a DNA test showing a 0.0 percent chance that Justin was Halley’s father were filed in Lincoln County.” Maj. Op. ¶ 14. The majority thus concluded, “it cannot be fairly argued that the learned chancellor erred in finding that the presumption of paternity had been rebutted_”[13] Maj. Op. ¶ 15. But Montgomery filed a petition to establish paternity[14] more than a month after *516 Justin’s death. The parties entered an agreed order in this separate action ten months after Justin’s death. Halley’s mother agreed to the order which established Montgomery as Halley’s natural father and awarded Montgomery joint custody and visitation. Justin’s estate was not a party to that action, and the order did not make reference to. Justin. Even so, the order would not have disestablished paternity for the deceased, legal father, which appears to have been Justin’s status, as related to Halley, at the time he died.
¶ 23. In Hogan v. Buckingham ex rel. Buckingham, 730 So.2d 15 (Miss.1998), the Court addressed this very issue: whether a prior adjudication of paternity could be challenged in heirship proceedings related to distribution of settlement funds for a wrongful death claim. In Hogan, 730 So.2d at 16-17, the administratrix filed a complaint for wrongful death, and after a settlement was reached, the admin-istratrix filed a petition for determination of the wrongful death beneficiaries. The administratrix requested DNA testing to establish the paternity of two alleged beneficiaries, but the chancellor denied the requests. Id. at 17. On appeal, this Court noted that the determinative issue was whether a prior judgment establishing paternity could “bind[ ] the estate pursuant to the plain language of Miss.Code Ann. § 91 — 1—15(3)(b) (1994).” Id. at 20 n. 1. The statute since has been amended, but Section 91 — 1—15(3)(b) has remained the same:
An illegitimate shall inherit from and through the illegitimate’s natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
[[Image here]]
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate[.]
Miss.Code Ann. § 91—1—15(3)(b) (Rev. 2013). In a nearly unanimous opinion,[15] the Court affirmed the chancellor’s denial of DNA testing, holding that “the defendants had already been determined to be the heirs of [the decedent] as a matter of law.” Hogan, 730 So.2d at 20. The opinion further noted that it was of no consequence that paternity had been established by means of two default judgments in unrelated support proceedings. Id. Those prior judgments were found to be controlling.
¶ 24. As in Hogan, the parties do not dispute that several court orders established Halley as Justin’s daughter,[16] and no court order in the record disestablishes Justin’s paternity of Halley, either before or after Justin’s death. In the absence of an adjudication otherwise, Halley was Justin’s daughter at the time of his death and thus his wrongful death beneficiary. The proceedings to establish Montgomery as Halley’s biological father would not have affected her status as an heir, for the relationship with which we ultimately are concerned is the legal relationship of Halley and Justin at and before the time of Justin’s death. The laws governing descent and distribution provide procedures by which paternity of an illegitimate child may be established after death. See Miss. Code Anri. § 91-1-15 (Rev.2013). However, those laws do not contemplate a proce *517 dure to disestablish paternity posthumously-
¶ 25. The majority notes that Justin’s name was removed from Halley’s birth certificate and replaced with Montgomery’s name, and that Montgomery was awarded visitation and ordered to pay child support. Yet these actions did not occur until after Justin’s death. The majority also implies that Justin could have adopted Halley; but, adoption proceedings would have been superfluous, because Justin was Halley’s legally recognized father. Nevertheless, some testimony indicated that Justin’s visitation rights and support obligations had been suspended during the divorce proceedings, even though it appears that no ruling had been made regarding the results of a paternity test.[17] Because the record does not indicate why, or whether, there was an order in the divorce proceedings related to Justin’s parental rights and obligations, we cannot know whether the prior adjudications of paternity still were in effect when he departed this life. If these adjudications were undisturbed, Halley is a wrongful death beneficiary as a matter of law.
¶ 26. Further, the majority asserts that Hogan and Section 91 — 1—15(3)(b) are inapplicable, because only the wrongful death statute, not the descent and distribution statutes, applies. For this proposition, the majority cites Ray v. Ray, 963 So.2d 20, 26 (Miss.Ct.App.2007), from the Mississippi Court of Appeals, which did in fact hold that “it is ‘incorrect as a matter of law1 to consider descent and distribution cases or statutes governing descent and distribution when considering a wrongful death case.” The Court of Appeals continued, without citation, that “[a] wrongful death action is a separate action from the estate of the deceased, therefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate’s estate.” Id. Hogan belies this notion, and this Court has observed that “[t]he heirs at law under our law of descent and distribution are the same as the wrongful death beneficiaries.” Long v. McKinney, 897 So.2d 160, 186 n. 10 (Miss.2004).
¶ 27. The majority further opines that our application of Hogan to the present case is misplaced, since “Halley was born into a marriage to a father who was not her natural father,” which Mississippi Code Section 91 — 1—15(d) defines as “the biological father.” Maj. Op. ¶ 17. Justin and Holly were married at the time of the birth of Halley — and, indeed, at the time of Justin’s death. Thus, Justin may have been her legal father at that time. Likewise, at the time of Justin’s death, Halley may have been his legal child, notwithstanding any biological determination otherwise. If Halley was the legal child of Justin at the time of his death, she is entitled to benefit from the wrongful death proceeds. Again, I do not argue that Halley unequivocally is entitled to benefit from the wrongful death proceeds; I merely state the need for an examination of the existence and content of any judicial determinations of Halley’s status prior to Justin’s death. If a determination was made that Halley was not legally Justin’s child at the time of his death, then she may not be entitled to the proceeds of the *518 wrongful death settlement. But such an examination is, nevertheless, a necessity. ¶ 28. “Statutory language ... ‘cannot be construed in a vacuum.’ ” Roberts v. Sea-Land, — U.S.-,-, 132 S.Ct. 1850, 1357, 182 L.Ed.2d 341 (2012) (citing Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). In Burley v. Douglas, this Court held that Burley was a proper wrongful death claimant and an interested party for purposes of standing where, “under our laws of intestate descent and distribution, he would have been entitled to inherit property” from his deceased daughter and grandchildren at the moment of their deaths. Burley v. Douglas, 26 So.3d 1013, 1021 (2009) (citing Miss.Code Ann. §§ 91-1-1 to -31 (Rev.2004)). Following the reasoning of Burley, if Halley legally was Justin’s child at the moment of Justin’s death, she was his wrongful death beneficiary. But we cannot know what Halley’s legal status was at the time of Justin’s death without examination of the prior chancery adjudications and a determination of whether those prior adjudications were in effect and binding at the moment of Justin’s demise.
¶ 29. The majority criticizes our use of Burley, noting its recognition of “the statutory distinction between a party’s authority to bring a wrongful-death action and the party’s ability to recover damages from it.” Burley, 26 So.3d at 1021-23. But the concepts of standing to bring suit and entitlement to damages are not mutually exclusive, as Burley recognizes. Id. at 1021. Although Burley does state that “a ‘statutory heir’ does not necessarily qualify as a ‘listed relative’ under Mississippi’s wrongful-death statute,” a “person who qualifies as a ‘statutory heir’ is one who is eligible to inherit from the decedent under our intestate descent and distribution statutes, and who therefore may be adjudicated by the chancery court as an heir-at-law of the decedent.” Id. at n. 8 (citing Miss. Code Ann. §§ 91-1-1 to -31 (Rev.2004); § 11-7-13 (Rev.2004)). Again, if at the time of Justin’s death, Halley was legally his daughter, then she is entitled to recover damages pursuant to the wrongful death statute, by virtue of the descent and distribution statute. While the majority manifests apparent comfort in assuming Halley’s status at the time of Justin’s death, I urge a judicial determination of what her status actually was before this Court decides whether the benefit of wrongful death damages should or should not inure to her.
¶ 30. The circumstances of this case are unusual. But peculiar fact patterns do not diminish the relationship between our laws of descent and distribution and our wrongful death jurisprudence, which must be considered together when our courts undertake the legal determination of a decedent’s wrongful death beneficiaries. Hogan, 730 So.2d at 19-20. In this case, the chancellor found that the presumption of paternity had been rebutted, and that Justin simply had stood in loco parentis to Halley. Yet, there was more than a presumption in this case, for Justin’s paternity of Halley may have been established as a matter of law. In the absence of a contrary judicial determination while Justin was alive, Halley is a wrongful death beneficiary of Justin Michael Smith, deceased. Given the omissions from the record, I would reverse the judgment and remand the case for the chancellor to examine these prior adjudications to determine whether they still were binding at the time of Justin’s death. For these reasons, I respectfully dissent.
LAMAR, KING AND COLEMAN, JJ., JOIN THIS OPINION.

. As noted above, the parties and the chancellor agreed that Justin was presumed to be Halley's father.

. The majority is correct that a DNA test was ordered as part of the divorce proceedings. But that was a separate test, focused on Justin’s biological relationship vel non to Halley, and it did not establish Montgomery as the biological father. Maj. Op. ¶ 3.

. Justice McRae concurred in result only without opinion.

. Specifically, the report of the guardian ad litem makes reference to several chancery court adjudications finding that Justin was Halley's father. Those judgments and/or orders are not included in the record on appeal.

. The majority cites cases holding that prior paternity orders "may be vacated once DNA testing establishes someone other than the named individual” as the child’s biological parent. Griffith v. Pell, 881 So.2d 227, 231 (Miss.Ct.App.2003) (citing M.A.S. v. Miss. Dep't of Human Servs., 842 So.2d 527, 531 (Miss.2003)). But here, the record is devoid of any suggestion that the prior orders recognizing Justin as Halley's father had been vacated.